JACKSON, <em>ex dem.</em> HOWARD and others, <em>against</em> HOLLOWAY.

*A.* having made his will, duly executed, devising all the lands of which he was then *in possession,* to his four sons; and having afterwards become seised of other lands, he altered his will, by erasures and interlineations, so as to make the devise extend to all lands of which he should *die seised;* and endorsed a *memorandum* to that effect on the will, stating the alterations which he had made ; but the *memorandum* was attested by two witnesses only ; it was held, that the erasures and interlineations did not destroy the original devise ; but that the alteration not being attested by three witnesses, could not operate ; and the lands acquired subsequent to the date of the devise, descended to the heirs at law.

THIS was an action of *ejectment* for land in *Duchess* county. *William Holloway*, under whom the lessors of the plaintiff claimed, as heirs at law, died about the year 1794, leaving four sons, *William, Joseph, John* and *Justus*, and six daughters, *Hannah, Sarah, Margaret, Alice, Lydia* and *Mary*. Since the decease of the ancestor, *Hannah*, one of the daughters died, leaving three sons

and two daughters, her heirs; and the ancestor's daughter *Mary* also died leaving other two children. The lessors are the four daughters of the ancestor, who are yet living, and the heirs of the two deceased daughters; and, as such, they claim *six tenths* of his real estate.

The ancestor, *William Holloway*, being seised of part of the premises in question, on the 13th day of *July*, 1786, made his will, executed in due form of law, and devised as follows: " I also give and devise unto my loving sons, *William Holloway*, *Joseph Holloway*, *John Holloway* and *Justus Holloway*, all my land in fee-simple, and otherwise, which *I am possessed of*, as also all my stock," &c.

After making this will, the testator became seised of *other land*, also part of the premises in question, and while so seised, altered his will, by erasing the words " am possessed of," and putting in their place, the words, " die possessed of," and interlining the words " and also," making the will to read, " all my lands of which I die possessed of, and also all my stock," &c. And the testator, at the same time, endorsed on the will an instrument, as follows; " Be it remembered, that I *William Holloway*, the testator of the above last will and testament, by me signed, on the 13th day of *July*, 1786, having this day, being the 25th day of *July*, 1794, renewed the same, have made the following alteration, to wit, in the second page in the ninth line from the top, have altered it to read, ' all the lands I die possessed of,' in lieu of all the lands I then possessed, and also, have interlined the words ' as also,' in the same line;" which instrument was duly signed, sealed and published by the testator, in the presence of *two* persons, who also signed the same as witnesses, in his presence.

The testator, *William Holloway*, after so altering his will, died seised of the premises in question, and the defendant, being in possession, claimed to hold the same

in severalty, adversely to the claims of the lessors of the plaintiff, as heirs at law.

The questions submitted to the court were, 1st. Whether by the alterations made by the testator, the will was not annulled and avoided? If not, 2d. What property passed by the will?

*Ruggles*, for the plaintiff. The alteration is so made as to change the description of the estate. The words in the original, " I am possessed of," are essential to the description. Those words being struck out, it would be impossible to know what lands were intended, without the aid of parol evidence. The addition, afterwards, not having been made in the presence of three witnesses, the clause must read, as if there were a blank in the place of the words " I am possessed of," and it would be necessary to resort to parol testimony to explain what was devised.

In the cases* which may be cited on this subject, in regard to revocations, it will be found, that either the act of revocation was equivocal, or that the will remained a good will, notwithstanding the obliteration or alteration of a part. In *Larkin* v. *Larkin*,† and *Short* v. *Smith*,‡ the name of one of the devisees was struck out, and this was held to operate only as a revocation *pro tanto*, but the will still remained a good will, and did not require any parol evidence to explain it. Those cases, therefore, are not applicable to the present.

Where the act is not equivocal, there is no reference to be made to the intention to revoke; and in case of a fine levied, or recovery suffered, after a devise, the courts will presume an intention to revoke.§

There is a difference in the phraseology of the *English* statute and our act relative to wills. If the 3d section of the act concerning wills (24th sess. c. 9.) be compared with the 6th section of the statute of 29 *Car.* II. c. 8. to prevent frauds and perjuries, it will be found,

* 1 *P. Wms.* 344.
note 1. *Prec. in Ch.* 469. *Cowp.* 812.

† 3 *Bos. & Pull.* 16.
‡ 4 *East*, 419.

§ *Cruise*, tit. 38. c. 6. 60. 65. 3 *Wils. Rep.* 12, *Amb.* 215.

that the latter confines the effect of the obliteration, or erasure, to the revocation of the particular clause, and leaves the rest of the will entire, whereas, by our act, the obliteration of any part or clause avoids the whole. It is consistent, therefore, with the *English* statute, that the particular clause should be revoked by obliteration, while the rest remains entire; but in the present case, under our act, the erasure or obliteration of a single clause destroys the whole will.

*J. Tallmadge*, contra. I shall rely on the cases which have been cited, as perfectly applicable to the case before the court, and decisive in our favour. No alteration or obliteration will amount to a revocation, unless done *animo revocandi*. It is the intention of the testator to revoke, which constitutes the revocation.* The cancelling of a will is an equivocal act, and it may be shown *quo animo* it was cancelled.† And where the act of cancelling is done in reference to another act, meant to be an effectual disposition, it will be a revocation, or not, according as the relative act is efficacious or not.‡

There was nothing in the present case to show any intention to revoke the devise; the alteration went merely to add to the estate already devised. It did not change the devise.

Admitting the words struck out to leave a blank, still there is a perfect and good devise; and parol evidence may be received to explain the intention, and that will sufficiently appear from the memorandum of the testator, endorsed on the will.

*Harison*, in reply, observed, that the statute on this subject being to prevent fraud and perjury, was a highly beneficial and salutary act. If, then, it should appear, that by allowing the will to stand after this alteration, a door would be opened to those mischiefs which the statute was intended to prevent, the court would look to

ALBANY,
Feb. 1811.

JACKSON
v.
HOLLOWAY.

* *Cruise.* tit. 38, c. 6. s. 11. 24, 25. *Doug* 852. *Cowp.* 812. *Pow.* on *Dev.* 635.
† *Cowp.* 52.

‡ *Powell* on *Dev.* 637. *Cruise*, tit. 38. c. 6. s. 18. 19. 1 *Eq. Cas. Abr.* 409. *Prec. in Ch.* 409. 1 *P. Wms.* 344. 3 *Bos. & Pull.* 16. 4 *East*, 417.

the general object of the statute, and endeavour to carry it into effect. Now, if the will is to stand, except as to the part obliterated, a wide avenue to fraud will be opened; for it is impossible to determine, from inspection, what were the words which have been erased. It may be that the testator had an estate in *reversion*. If we are to look to the intention, we must inquire what words the testator meant to strike out, and resort must be had to the memorandum or codicil for that purpose. We, then, take a codicil or writing, not executed according to the statute, and which may be a forgery, to show the intention of the testator, and to support the devise.

As to those acts which are to show the *animus revocandi*, some are equivocal; as if a man, by mistake, cancels a wrong paper, or cancels his will, because he thought another will was completed, when it was not. But where a party obliterates his will, without reference to any future or subsequent act, it must be regarded as a present and complete act of revocation. Where acts are equivocal, and have reference to some other acts, the intention to revoke may be shown; but no such evidence is admissible, where the act is not equivocal. The revocation does not, therefore, always depend on the intention. That rule has been laid down too broadly by the writers who have been cited.

In the cases of *Larkin* v. *Larkin*, and *Short* v. *Smith*, the original state of the will, and the alteration made, were visible and apparent to the witnesses; but in the present case, the witnesses cannot say what were the words struck out.

The difference in the phraseology of our act, and that of the *English* statute from which it was taken, is not to be accounted for, but on the supposition that it was the intention of the legislature to depart from the *English* statute; and if that is attentively examined, it will be found that the revocation is confined to the particular clause obliterated, and where, on the face of the will,

the alteration does not materially affect the rest of the devise.

*Per Curiam.* The obliterations in the will were made, not with an intent to destroy the devise already made, but to enlarge it, by extending it to lands subsequently acquired. The testator, however, failed in making interlineations and corrections which could operate, from not having the amendments attested according to law. The obliterations cannot, therefore, destroy the previous devise, for that was not the testator's intention. The mere act of cancelling is nothing, unless it be done *animo revocandi.* Here the devise was left untouched, and the only alteration was to embrace other lands in the same devise. It is, therefore, very clear, from all the authorities cited on both sides, that the first devise must stand good. The case of *Onion* v. *Tyrer*, (1 *P. Wms.* 343. note 1.) and the case of *Short* v. *Smith*, (4 *East,* 419.) are decisive, and much in point. The lessors of the plaintiffs are, then, entitled to six tenths of all the lands acquired by the testator after the making of his will, in *July*, 1786, and to no more.

Judgment accordingly.