McPHERSON *vs.* CLARK.

*In the matter of proving the last will and testament of* JOHN
McPHERSON, *deceased.*

A testator, after duly executing his will, passed a pen through portions of a devise
to his daughter, giving in a note at the foot of the page, bad treatment as a
reason. *Held,* that there may be a partial revocation of a will by obliteration.
In respect to revocations, it has become a settled rule, not to give effect to a
part of the testator's intention, when effect cannot be given to the whole
of it; and where, in connection with an attempt to revoke devises to his
daughter, the testator designed to give the same property over to his two sons,
by altering the residuary clause, striking out the words "my children," and
inserting "my two sons," the insertion being inoperative for want of re-ex-
ecution and attestation, and the intent failing as to the substitution intended;
*Held,* that the devises to the daughter were not revoked, and that the will
should be admitted to probate as it originally stood.

CUMMINGS, ALEXANDER, & GREEN, *for devisee.*

The will was proved by the two subscribing witnesses to
have been executed, and published, and witnessed in a proper
'manner under the statute; but upon inspection of the will by
the Surrogate, there were found to be several erasures and
interlineations which materially affect some of the devises
of the will, and cut off one of the original devisees, if the
interlineations and erasures were made after execution.

The FIRST question arising upon the will is, when were the
erasures made? whether before or after execution.

The SECOND question is, if made after execution, what effect
they will have upon the will itself, and upon the several de-
vises in the will?

As to the first question. There is a memorandum on the
bottom of the first page of the will, to the effect that the tes-
tator had stricken out the name of one of the devisees, on
account of her ill treatment of him.

James Cruikshank, who drew the will, swears that he drew it according to instructions given him by the testator the day before its execution; at that time, therefore, the testator had no intention of disinheriting his daughter, and it does not appear that anything occurred between the time of giving the instructions to Cruikshank as to the contents of the will, and the time of the execution of it. At its execution nothing is said of any alterations, and although it is drawn and executed with great care, no memorandum is made of the alterations. The presumption is therefore raised that the alteration was made after its execution, and such presumption is *conclusive* unless *rebutted* by other proof; there is no such rebutting proof in this case.

Again, Cruikshank swears that the erasures and interlineations were not in the will at the time of its execution, and he states how the will was at that time. The question arises whether parol evidence can be received to prove these facts.

It was held by the Court, that parol evidence could be introduced to show that the will was altered after execution. (*Jackson* vs. *Malin*, 15 *John.*, 293.)

It was held .by the Court, that an erasure in a deed may be proved by a person not a subscribing witness. (*Penny* vs. *Corwithe*, 18 *John.*, 499; *Phil. on Ev.*, 8th *Ed.*, 653, *Amos on Ev.*, 5th *Am. Ed.*, *from* 8th *Lon.*, (653) *marginal paging. See notes to page.*)

We, therefore, have competent proof that the erasure was made after execution, which brings us to the second question, " The effect of such alteration upon the will and the several devises." (*Jackson* vs. *Holloway*, 7 *John.*, 396.)

A will may be revoked or altered by some other will or writing of the testator, declaring such revocation or alteration executed with the same formalities with which the will itself was required by law to be executed. It may be revoked also by being burned, torn, cancelled, obliterated or destroyed, with the intent (on the part of the testator) and for the purpose of revoking the same. (2 *R. S.*, 64, § 42.)

The Court will perceive that the Revised Statutes provide, that an alteration in a will must be made in writing, executed

with the same solemnity and form as the will itself; but that the entire will can be revoked, not a *part*, by burning, cancelling, obliterating, and destroying : the very terms used in the second paragraph of the section shows that they apply to a revocation of the whole will, and not of a part; as the burning. of a will, *animo revocandi*, must apply to the whole and not to a devise, from the very nature of the act, and the section speaks of a will and not of a devise contained in a will.

In this it differs from the English statute, which speaks of " a clause of a will," and therefore the case of *Short* vs. *Smith*, 4 *East.*, 419, and similar decisions in the courts of England, are not applicable to this case.    They hold that a clause of a will may be revoked by obliterating, and the rest of the will stand, if such was the *animus* of the testator.    That depends upon their statute, which, in that respect, is different from ours.    Theirs speaks of the revocation of a clause of a will, ours of a will—hence the difference.    (29*th Car.*, 2 *cap.* 3, *VI.*, *Bacon's Abridgt.* (*Dub. Ed.*) vol. *V.*, 522; *Wills & Testaments*, *G.* 1.)

The act of the testator, no matter what it be, whether burning, tearing, obliterating, &c., is to be judged of by the *quo animo*.    If it is done *animo revocandi*, it is a revocation, if not done *animo revocandi*, it is no revocation.

In this case, the testator himself has left on record in his own handwriting, his intent, which was not to revoke the will, but one of the devises, and this he could not do under our view of the statute, except by a new will, codicil, or alteration, executed with the same formality required for the execution of wills.    This he has not done.

Again, this partial revocation was intended to operate as a further devise to his sons; in that it clearly failed, and the Courts have decided and it has become the settled rule that, " that which is intended to operate as a devise, if it cannot take effect as such, shall never operate as a revocation." (*Eccleston* vs. *Pelty*, *Carthew*, 80; *Jackson* vs. *Holloway*, 7 *J. R.*, 394; 1 *Powell on Devises*, 637; 1 *P. Wm. R.*, 344; 3 *Bos. & Pul. R.*, 16.)

If this will has then been obliterated without the *animo*

*revocandi*, and so obliterated as not to be legible, then it is the same (as to the parts obliterated) as if it were a lost will, and can be proved by parol, though the testimony must be of the most stringent description. As to proof of lost wills, *See* 2 *Greenl. Ev. p.* 671.

THE SURROGATE.—The testator had three children, and by his will devised to his two sons a lot in Washington street, and to his daughter a lot in Carlisle street, and some property in the city of Brooklyn. The will was duly executed in May, 1844. As now presented for probate, a pen has been passed through the lines underscored, giving the devise to his daughter as follows: " *To my beloved and only daughter Sarah Ann McPherson, I give and bequeath, subject to the* mortgage which may be upon it at my death, the real estate with the appurtenances now owned by me and known as No. 9, Carlisle street, in the city of New York, *and I also give and bequeath unto her, the real estate now owned by me, situated* at or near Bedford, in the city of Brooklyn, *Long Island, N. Y., the gift of both to her forever.*" At the foot of the first page of the will in the testator's handwriting are the following words: " I have erased the name of Sarah Ann McPherson from my will, in consequence of bad treatment." This writing is not sufficient to revoke the will or any part of it, the statute requiring a revocation to be executed with the same formalities as were requisite to the making of the will. But a will may be revoked by being " burnt, torn, cancelled, obliterated, or destroyed, with the intent and for the purpose of revoking the same." (2 *R. S., p.* 64, § 35.) It is quite obvious that the erasures made by the testator were not made with the intent to revoke the will. His purpose was to revoke only the devise to his daughter. The residuary clause shows this very plainly, for he there erased the word " children," and inserted my " two sons," so as to exclude the daughter, and yet retain the benefit of the clause for the sons. He did not design then to revoke his will, and it is not important, therefore, to consider whether the erasures constituted a cancellation or obliteration

of the will. The *animus revocandi*, which undoubtedly existed as to particular portions, did not reach the entire instrument, but, on the contrary, he intended the remainder of the instrument to stand in its altered state. It is necessary to consider whether a part of a will can be revoked by erasure, or cancellation. By the statute of frauds, 29 *Car.* 2, *c.* 3, *s.* 6, it was provided, " that no devise in writing of lands, tenements, or hereditaments, *nor any clause thereof*, shall be revocable, otherwise than by some other will or codicil in writing, or other writing declaring the same, or by burning, cancelling, tearing or obliterating the same." The same alternative expression is used in that statute relative to wills of personal estate, *i. e.* that no such will, nor " *any clause, devise, or bequest therein*," shall be altered except in a prescribed manner. The language of our statute is, that " no will in writing, except in the cases hereinafter mentioned, *nor any part* thereof, shall be revoked or altered, otherwise than by some other will, in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, cancelled, obliterated, or destroyed, with the intent, and for the purpose of revoking the same." Does the statute admit of a partial revocation by obliteration? On comparing it with the Statute of Frauds, and the provisions of the Revised Laws, (1 *R. L.*, *p.* 365,) relative to the revocation of wills, there does not seem to be any material variation so far as relates to this question. The words of our old statute were, " that no such last will and testament, duly executed as aforesaid, or any part thereof, shall be revocable, or be altered otherwise than by some other will or codicil in writing, or other writing of the party to such last will and testament, declaring the same, and signed, attested, and subscribed in manner aforesaid, or by burning, cancelling, tearing, or obliterating such last will and testament, by the testator himself, or in his presence, by his direction and consent." All of these statutes have preserved the alternative form extending the power of revocation to the " will," or " any clause thereof," or " any part thereof," and this alter-

native determines what may be revoked—the will *or* a part of it. The method of revoking is then declared to be by writing, or by burning, tearing, cancelling, or obliterating. The idea that obliteration cannot effect a partial revocation, because the language of the Revised Statutes is "unless such will" be obliterated, does not seem well founded. The expression in the former Statute of Wills was, " obliterating such last will and testament," and yet it was not questioned in a case that arose under that act, that a partial revocation might be effected by a partial obliteration. (*Jackson* vs. *Holloway*, 7 *John.*, 394.) An obliteration may be total or partial, and as the statute declares that *a will or any part* of it may be revoked by obliterating the will, I think a reasonable construction will permit a partial revocation. It does not appear that it was intended to alter the law existing previous to the Revised Statutes, so as to affect the right to obliterate a portion of a will, the object of the variations made from the third section of the act of wills, being " to guard more effectually against frauds and to render the section conformable in its terms to the construction it had received," in respect to the intent of the testator, when performing an act of revocation. (*Revisers' Notes*, 3 *R. S.*, 2d *Ed.*, *p.* 631, 4 *Cowen*, 483, *Dan* vs. *Brown.*)

It never seems to have been doubted that a portion of a will might be revoked by obliteration. In *Roberts* vs. *Round*, 3 *Haggard*, 548, the testatrix having partially mutilated a duplicate will, Sir John Nicoll said, " Suppose that the mutilated instrument alone had been found, and that no duplicate had ever existed. This mutilation of the first sheet, leaving the signature untouched, would not be a total revocation—it would be a revocation of those particular devises only." In support of this position, he refers to *Larkins* vs. *Larkins*, 3 *Bos. & Pull.* 16. In that case, the testator having made a devise to three persons, as joint tenants, afterwards struck out the name of one of the devisees, without republication, and it was held that the erasure operated only as a revocation of the will *pro tanto*. Lord Alvanley remarked, " I have no doubt upon this case. A revocation by

obliteration will have the same effect, which a revocation by any other means will have, and no more." In *Burkitt* vs. *Burkitt*, 2 *Vernon*. 498, certain devises were obliterated and alterations made, and it was decreed that the obliterations did not revoke such clauses as remained unaltered. (See *Limbery* vs. *Mason*, *Comyns R.*, 451.) In *Sutton* vs. *Sutton*, *Cowper*, 812, various and extensive alterations were made, and parts obliterated *animo revocandi*, but it was decided that the whole will was not revoked, and a devise of certain real estate was sustained as valid and unaffected. The same doctrine has been held in this country. In the case of *Brown's Will*, 1 *B. Munroe*, *p.* 57, it was declared that a cancellation of a portion of the devises, the testator's signature being left untouched, did not affect the residue of the dispositions, which remained unaltered, the testator's intention not to revoke them being clearly established.

But although a partial revocation may be effected by obliteration, yet the language of the statute being merely permissory, and the revocation depending on the testator's intention, it has become a well-established rule not to give effect to a part of the testator's intention when effect cannot be given to the whole of it. Thus in *Short* vs. *Smith*, 4 *East.*, 417, it was held, that when the testator had no disposition to revoke by the obliteration he had made, except in connection with an effectual substitution meant to be made of others in the room of him whose name was obliterated, if such substitution could not operate, the revocation would not take effect. The Supreme Court of this State adopted this principle in *Jackson* vs. *Holloway*, 7 *J. R.*, 394, deciding that alterations intended to enlarge the operation of the will, but not properly attested, so as to become operative, did not revoke the former disposition. (See *Onions* vs. *Tyrer*, 1 *P. Wms.* 343; *Kirke* vs. *Kirke*, 4 *Russ.*, 435; *Martins* vs. *Gardiner*, 8 *Simons*, 73; *Mence* vs. *Mence*, 18 *Vesey*, 350; 11 *Meeson* vs. *Welsby*, 901; 1 *Jarman on Wills*, 120.) (9 *Cow.* 208; 2 *J. R.*, 31; 2 *Watts & Serg.*, 455; 4 *Serg. & Ran.*, 295.) Applying this principle to the present case, we find that the testator, in connec-

tion with his attempt to revoke the devises to his daughter, designed to give the same property over to his two sons, by altering the residuary clause, striking out the words " my children," and inserting " my two sons." This insertion is inoperative for want of re-execution and attestation, and the intent failing as to the substitution intended, it must, according to the rule just adverted to, fail likewise as to the revocation intended. I think enough remains on the face of the will, with the aid of the draftsman's testimony, to show that the word erased in the residuary clause was " children," and the will may be so recorded. That is unimportant, however, for rejecting the alteration, would leave the will blank, and in that case all the children would take the same interest by the statute of descents, as they would take under the will.