OSWEGO COUNTY—HON. AMOS G. HULL, SURROGATE—March, 1863.

## SWEET *v.* SWEET.

*In the Matter of the Probate of the last Will and Testament of* CHARLES S. SWEET, *deceased.*

The complete destruction or cancellation of a will, is not necessary to constitute its revocation. A destruction of it, as complete as was in the testator's power in his infirm health, is sufficient; the testator being of a sound mind, and the act being *animo revocandi.*

The testator tore his will into several fragments, which were carefully collected by his wife, and sewed together in such a manner that the instrument was perfectly legible when propounded for probate. The testator was of sound mind, though in infirm health, at the time of the tearing, and expressed satisfaction at its destruction.

*Held,* that there was a valid revocation of the will.

The widow of the deceased, an executrix named in the paper offered for probate, filed her petition, asking to have

such paper admitted to probate as the last will and testament of the deceased.

On the 27th of January, 1863, the parties appeared and proceeded to a hearing. The facts fully appear in the opinion.

The Surrogate.—From the testimony, it appears that in 1861, deceased made a will devising his homestead to his wife; and after making liberal *bequests* to her, according to his means, and ample provision for his children, he gave certain small specific legacies to his mother, and his brothers and sisters.

In the fall of 1862, he was taken ill with pulmonary disease, and after being sick a few weeks, on the 3d of Nov., 1862, while confined to his bed, made a codicil revoking all the provisions of his will, and giving all his property, real and personal, to his wife. It appeared that there were several grave irregularities relating to the execution and publication of the codicil, to which it will not be necessary to refer, for the reason that another point in the case was raised of more vital consequence to the validity of the instrument than the irregularities relating to its execution.

From that part of the testimony concerning which there was a conflict or dispute, it appeared that about one week after the codicil was executed, and while the deceased was confined to his bed, he requested his wife to hand him the will. She at first declined. He told her that he wanted to see the man who drew it, and his brother, the executor. She finally handed him the paper. He took it in his hand, and holding it up before him, tore it into some ten or twelve fragments, and left the pieces on the bed. He then attempted to get up, but was prevented by the petitioner. He became excited and somewhat exhausted by the effort.

She gathered up the pieces and put them in a desk, without the knowledge of the deceased, and locked the desk, where the paper remained in the same condition until after the deceased was buried.

The will and codicil and certificates of the witnesses were written upon one sheet of paper. When presented for probate, the several pieces had been sewed together by thread, in such an ingenious manner that the paper was perfectly legible.

It appears in evidence that the deceased did not know that the fragments of the paper were preserved; that afterwards, he frequently spoke of having torn up and destroyed his will, and expressed a desire to recover his breath, that he might be able to make another will.

In one conversation, while talking about a will, the petitioner remarked, "You have no will;" and the deceased replied, "I should have had another drawn, if my friends had not advised me not to."

The only testimony tending to show unsoundness of mind at the time of the destruction or revocation of the will, was that of the witness, who testified that deceased appeared excited, and wanted to get up and put on his clothes, and made use of singular language to his daughter respecting the petitioner.

On the contrary, the attending physician testified that he saw nothing indicating insanity or unsoundness of mind in the deceased;—that in talking with him, soon after the will was torn to pieces, he appeared to be perfectly rational; said the reason that he had torn it up was, there were others that he wished to benefit besides Julia,—the petitioner.

A number of other witnesses corroborated the physician. From all the testimony, it is evident that the deceased died with the belief that his will had been utterly destroyed, and that no part of it was in existence.

Was this a revocation of the will within the meaning of the Revised Statutes?

The statute prescribes that a will may be revoked—1st. By another will in writing; 2d. By some other writing of the testator, declaring such revocation or alteration, executed with the same formalities with which the will itself is required by law to be executed; 3d. By burning, tearing, can-

celling, obliterating, or destroying the instrument, with the intent and for the purpose of revoking the same; 4th. By marriage, or changes in testator's condition in life. (2 *Rev. Stat.*, 64.) Under the third requisite of the statute, in order to make the revocation complete, the act must be done *animo revocandi.* The mere act of tearing or cancelling is not sufficient. (*Jackson* v. *Halloway*, 7 *Johns.*, 394; *Jackson* v. *Pattie*, 9 *Id.*, 312; *Smith* v. *Hart*, 4 *Barb.*, 28; *Nelson* v. *McGiffert*, 3 *Barb. Ch.*, 158; *Perrott* v. *Perrott*, 14 *East*, 423; *Willard on Ex.*, 123.)

In this case, the tearing and obliteration and destruction of the instrument was as complete as the decease had the power of making it, in his then state of health. He saw it lying about him in scattered fragments, evidently to him appearing so badly torn as to be incapable of restoration. His language before tearing the paper, and his subsequent conversation, clearly indicate his purpose at the time to be, to make a complete revocation of the instrument.

The restoration of the instrument into a legible form was no act of the deceased. He saw it in pieces, scattered about the room. He expressed himself satisfied that it was no longer in existence, and died in the full conviction that he had left no will.

With this view of the evidence, I must refuse to admit the instrument to probate.