QUINN, appellant, v. QUINN *et al.*

*Will — alterations made by testator after execution.*

The testator, after he had duly executed his will, made, in his own handwriting, various alterations. Some legacies he erased, and some he directed to go to other persons. He also changed one of the executors. *Held,* that the will, as originally executed, should be upheld.

A testator cannot, by obliterations, partially revoke a will duly executed.

APPEAL from a decree of the surrogate of Kings county admitting the will of Edward Quinn to probate.

The will itself had been drawn by an attorney under the direction of the testator and executed by him. After the will was executed certain alterations were attempted to be made by testator by writing in the will, erasing and interlining. All these alterations appeared upon the will admitted, in the handwriting of the testator.

The alterations made by testator were as follows:

The insertion of the words " upon his obtaining his majority " after a bequest to testator's nephew, Joseph J. Quinn. The erasure of the words " unto my nephew Samuel Tickell, now of Dublin, Ireland, the sum of five hundred dollars ($500)."

The erasure of the words "Joseph Cowan" in a provision giving to him and to others certain bequests, and the interlineation over the name erased of the words "not to be given."

The erasure of the words "unto James Tully for faithful services the sum of five hundred dollars ($500)," and the interlineation "not faithful," "not to be given."

The erasure of the words "Hannah Hill the sum of five hundred dollars," and the interlineation "dead," "I paid funeral expenses."

The erasure of a bequest to the Rev. David Malone of $1,000 to purchase a bell for the Church of St. Vincent de Paul, in Williamsburgh, the testator writing on the margin "this amount and more I paid for bell. E. H. Q."

The erasure after the words "I give and bequeath my gold watch and chain unto," of the words "my nephew Samuel Tickell, now in Dublin, Ireland," and the interlineation of the words "to my nephew Edw. H. Quin, son of my brother John Quin." "E. H. B." The erasure in the list of names of residuary legatees of the words "Samuel Cowan," and the interlineation of the words "Joseph Tickell." The erasure in the list of executors of the will of the words "M. Cowan," the word "Tickell" being written between the lines and "Joseph Tickell" on the margin.

Under the attestation clause and names of witnesses was written, "Joseph M. Cowan not to receive either legacy or executorship. Anna Hill, dead; I paid funeral expenses; Rev. D. V. Malone, bell for St. V. de Paul Church, North Sixth street, I paid.

"EDW. H. QUINN."
Dated *July* 23, 1870.

"James Tully, not faithful, to receive no legacy. William Tickell, if faithful to receive five hundred dollars ($500).

"E. H. Q."
*November* 30, 1870.

The will was contested before the surrogate. There was some evidence tending to show that the testator was dissatisfied with the will and had procured another to be drawn, but no other will was produced. There was also evidence that the testator was, at times, so intemperate as to interfere with the transaction of his business. Some question was also raised as to the execution of the will, one of the subscribing witnesses being uncertain as to whether the tes-

tator stated to witness that the paper he was to sign was testator's will.

The surrogate found that the will was genuine; that it was duly executed, and that the testator was competent to make a will. He decided to admit the will, leaving out the bequests and names erased, but refusing to give effect to the interlineations and additions made by testator.

An appeal was taken by John J. Quinn, a brother of testator.

*John L. & Wm. Lindsay,* for appellant.

*Wm. T. Graff* and *E. More,* for respondent J. P. Quinn and others.

*Brainard & Rice,* for respondent Wm. Quinn and others.

*J. F. Harrison,* for respondent Geo. H. Quinn and others.

*Judah P. Voorhees,* guardian, etc., in person.

BARNARD, P. J. The appeal in this case brings up for review three questions.

*First.* Was the will executed and attested in the manner required by law?

From a careful review of the testimony I think there is no doubt but that it was. There are two witnesses to the will, both of whom were examined. The witness who drew the will, Mr. Tresider, is a lawyer, used to drawing wills, and having knowledge of the requirements of a due execution of the will under the statute. The attestation clause is full. This witness testifies fully to facts which make a complete execution of the papers as a last will.

The other witness (White) testifies that the testator said at the time it was signed by him, he wanted him (witness) to see his (testator's) signature; that he cannot say for certain that testator said it was his will, but thinks he did. "I saw him write his name, and ask me himself."

It is very manifest that the testator duly executed the will. Indeed, there is really no evidence against the positive evidence of these witnesses, except that a witness, Cowan, who was present in testator's store at the execution of the paper, did not hear the publication, or know that a will was being executed.

There is some proof that testator was addicted to intoxicating drinks; but the proof utterly fails to show any such condition of mind as would invalidate his will.

The second question presented is, was the will revoked? The proof fails to show any execution of a later will. There is some loose, but, to me, untrustworthy evidence of declarations of testator of a date subsequent to the date of this will, that he had revoked it, and that he was seen to have a later will, apparently duly executed. No execution of a later will was proven; and even if the testator did say he had revoked it, it would fail to accomplish the object, unless by revocation duly executed, or in one of the ways provided by statute.

The only important question in the case arises under the peculiar facts of the case established by the will itself.

It has been partially obliterated by the testator, with a view in some cases of destroying legacies under it, and in some cases the testator has attempted to alter his legatees, and he has attempted to alter one of his executors. It is manifest that he did not intend by these erasures and interlineations to revoke the whole will, but only parts of it. I think clearly the will is not revoked entirely by the evidence. Is it revoked as to the portion obliterated? Upon this point I find but two cases in our State— one under a former statute as to wills — *Jackson* v. *Holloway,* 7 Johns. 394 — where it was held that an interlineation, with a view to enlarge the devise, was void, unless the will was re-published and re-attested.

The will was in that case held to stand as originally made.

The other case is *McPherson* v. *Clark,* 3 Bradf. 92, where a testator obliterated a devise to his daughter and changed the residuary clause so that instead of passing to his children, it should pass to his "two sons;" the surrogate held the will good as it existed before the erasures. In giving the decision, however, the surrogate says, a will may be partially revoked by obliteration under our statute as it now exists. The point was not presented in the case, and the decision made was right under all the cases. In the case now presented, there are obliterations of a legacy or legacies, and no effort made to give the same to another, and thus the point is presented whether there can be a partial revocation by obliteration. The statute reads as follows:

" No will in writing, except in the cases hereinafter mentioned, *nor any part* thereof, shall be revoked or altered otherwise than by

some other will in writing, or some other writing of the testator declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed, or unless *such will* be burned, torn, canceled, obliterated or destroyed, with the intent and for the purpose of destroying the same."

I think this statute admits of no revocation of an executed will by obliteration, except an entire obliteration with intent to revoke the whole will.

I have carefully examined the cases cited by the surrogate in *Mc-Pherson* v. *Clark*, and by the learned counsel on the argument of the appeal, and think none of them justify the surrogate in this case, in leaving out of his record any portion of the will as originally executed. In the case of *Onions* v. *Tyree*, 1 Pere Wms. 343, it was decided that a void will, which contained a clause revoking all former wills, did not operate as a revocation.*

In *Short* v. *Smith*, 4 East. 419, a testator who had erased the name of one trustee and inserted in the place two other names, was held not to have revoked any part of the will. After giving the judgment, the court say, "that there are grounds on which it may be contended that the effect of the obliteration, at most, was to revoke, as to (the erased trustee) Spelman. In *Burkett* v. *Burkett*, 2 Vern. 498, a testator having devised a copyhold estate, directed certain parts of his will to be obliterated, but left the devise of the copyhold estate untouched. *Held*, that the will was a good will, and that the copyhold estate passed under it. In *Benton Shaw* v. *Gilbert*, Cowp. 49, a testator had executed a will in duplicate, and subsequently canceled by another will all former wills; it was held that a cancellation of the last will did not re-establish a duplicate of the first will. In *Goodwright* v. *Glazier*, 4 Burr. 2512, a testator gave his land by a will, and then made a new will which gave the same land to the same person. He then canceled the last of the two wills. *Held*, no revocation of the first will. In *ex parte The Earl of Ilchester*, 7 Ves., Jr., 348, it was decided that a testamentary appointment of a guardian was not revoked by a subsequent testamentary appointment, not executed according to the statute, and not directly importing revocation.

The case of *Larkins* v. *Larkins*, 3 Bos. & Pul. 16, is the nearest in point to the present case. There the estate was given by will to

* See to the same effect, *Rudy* v. *Ulrich*, 69 Penn. St.; 8 Am. Rep. 238.

two persons in trust, and the testator subsequently erased the name of one; it was held that it was a revocation only *pro tanto*. In this case the court say that "if the remaining devisees were to acquire any. estate which they had not before, something beyond a mere revocation would be necessary."

In the case before us, in some instances the testator has attempted to give an obliterated legacy to another person. The surrogate has, as to these, upheld the will as executed ; in other instances the testator has simply obliterated the legacy. The effect of this is to give the residuary legatees the erased legacy ; in other words, to make a new will without complying with the statute requisites.

I think the surrogate's decree should be modified so far as to admit the entire originally executed will to probate.

*Ordered accordingly.*