A will was found in testatrix's safe, carefully preserved among her valuable papers, with the original signature erased by drawing lines over it, and her name carefully rewritten by her over the erasure. *Held*, that there was no presumption that the erasure was made *animo revocandi*, or that the restoration was done after the execution, and that, in the absence of proof to that effect, the court would admit the will to probate.

Proceedings to probate the will of Sabrah G. Wood.

*George W. Hay* and *Will C. Moulton*, for the executors. *Daniel T. Arbuckle*, for contestants Eva H. Roberts and Alice N. Harrington. *I. S. & H. D. Newton*, for contestant Kittie A. Johnson.

JENKS, S.   On the 20th day of July, 1864, the testatrix duly executed and published the will that is now offered for probate.   The will was in her handwriting down to the concluding clause, "In testimony whereof," etc., which, with the attestation clause, was written by one of the witnesses, in the presence of the other witness.   And at the time the will was executed, after the death of the testatrix, the will was found at her residence in a locked drawer in her safe, which was also found locked.   It was in an envelope with her name upon the outside in her own handwriting.   The contestants object to the admission of the will to probate, on the ground that the paper offered is not her will.   It is conceded that it is the same instrument that was duly executed as her last will; but it is claimed that, at some time subsequent to its execution, it was duly revoked by the testatrix, by the erasure of her signature to the will, and that, if the present signature thereto is in the handwriting of the testatrix, it was not legally re-executed and published as her will.   It is apparent from an examination of the paper that the signature of the testatrix has been erased, first by drawing diagonal lines over the name, and then nearly erasing such lines and the name itself.   The evidence is quite conclusive that the instrument now bears the genuine signature of the testatrix, and that it is in the same condition as when taken from her safe.   Her name appears to be carefully rewritten over the original signature.   It is written with ink of a different color from that used in the body of the will or by the witnesses at its execution, but the evidence shows that the testatrix might have used different ink from that used by the witnesses.   I am unable to find as a fact, from the evidence of the surviving witness and from the appearance of the instrument itself, that the erasure was made either before or at the time of the execution, and there is no evidence in the case that throws any light as to when it was done, or why it was done.   With the burden of proof resting upon the contestants, I cannot presume, as matter of law, that the erasure was made at some time subsequent to the execution of the will. When an interlineation or erasure in a will is fair upon its face, and entirely unexplained, there is no presumption, in the absence of any suspicious circumstances, that it was fraudulently made after the execution of the instrument.   *Crossman* v. *Crossman*, 95 N. Y. 145; *In re Voorhees*, 6 Dem. Sur. 162.   I am asked by the contestants to presume, as matter of law, that the erasure was made *animo revocandi*, with intent to revoke and destroy the will, and that the act was sufficient to accomplish the intent.   2 Rev. St. pt. 2, p. 64, c. 6, tit. 1, art. 3, § 42, provides that "no will in writing, * * * nor any part thereof, shall be revoked or altered otherwise than by some other will in writing, * * * or unless such will be burned, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking the same by the testator himself."   In *Timon* v. *Claffy*, 45 Barb. 447, it was held that the testator may destroy his own will at any time or in any mode or

manner he pleases, and it need not be attested by witnesses. Schouler, Wills, § 388. If the testatrix cut out her own name from the will with clear intent to revoke it, it is a sufficient destruction. Id. § 389. Leaving off the seal with like intent would have the same effect. Id. So would drawing lines over the testator's name, *animo revocandi*, even though the signature is still legible, (Id. §§ 392, 393, 401, and notes; *Jackson* v. *Holloway*, 7 Johns. 394;) or if the signature is erased with a pencil, (*Woodfill* v. *Patton*, 76 Ind. 575, 2 Amer. Prob. Rep. 200.) But, whatever the means employed for defacing or destroying the will, a free and rational intention to revoke must accompany the act, or the revocation will not be valid. Schouler, Wills, § 384. The mere act of canceling is nothing unless it be done *animo revocandi*. *Jackson* v. *Holloway, supra*. Had the will been found with the signature of the testatrix erased and not rewritten, the legal presumption would have been that it was canceled and revoked by the testatrix *animo revocandi*. *Will of Clark*, 1 Tuck. 445; *Woodfill* v. *Patton*, 76 Ind. 575; *In re White*, 25 N. J. Eq. 501. The proponents having proved the due execution of the will, it is entitled to probate, unless the contestants prove its revocation by some one of the modes pointed out by the statute. Williams, Ex'rs, (6th Amer. Ed.) 196; 2 Whart. Ev. § 894; Abb. Tr. Ev. § 73, p. 123. If the will had been found in her safe, carefully preserved among the valuable papers of the testatrix, with her signature erased, it would have been a fair and reasonable presumption that she erased the signature *animo revocandi;* and it would then be lacking in one of the statutory requirements of a valid will,—the signature of the decedent at the end thereof. But when found with the signature carefully restored, no such presumption arises. In the absence of all proof, how can I find that it was made with the intent to revoke, when the instrument was preserved by her with her signature carefully restored? An intention to revoke a will not fully consummated is no revocation. *Doe* v. *Perkes*, 3 Barn. & Ald. 489. The cancellation of a will does not necessarily involve its revocation. The canceling itself is an equivocal act, and in order to operate as a revocation must be done *animo revocandi*. 2 Whart. Ev. § 900; *Dan* v. *Brown*, 4 Cow. 483, 490. It may be that Mrs. Wood drew the lines through her name with the intention of revoking the will, but immediately, and before the act was completed, changed her mind, erased the marks, and restored her signature. To sustain the theory of the learned counsel for the contestants, I must find that the erasure was made by the testatrix herself, understandingly, freely, and voluntarily, with no other purpose than to destroy her will, and that it was done at some time previous to the act of rewriting her name, and this finding is asked for in the absence of proof and with the burden resting upon the contestants to establish the fact of revocation. In *Re Prescott*, 4 Redf. Sur. 178, it was held that when the testator, after the execution of his will, made erasures and interlineations therein, without intending to revoke, and without re-executing the same, the will will be admitted to probate as originally executed. Mere tearing or destruction, without intention to revoke, is no revocation. 1 Jarm. Wills, (Rand. & T. Ed.) 302. "If a testator is arrested in his design of destroying the will by the remonstrance or interference of a third person, or by his own voluntary change of purpose, and thus leaves unfinished the work of destruction which he had commenced, the will is unrevoked; and the degree in which the attempt had been accomplished would not, it should seem, be very closely scrutinized, if the testator himself had put his own construction upon his somewhat equivocal act, by subsequently treating the will as undestroyed." Id. 289. In *Bethell* v. *Moore*, 2 Dev. & B. 316, Chief Justice RUFFIN said: "It may be admitted that the slightest act of cancellation with intent to revoke absolutely, although such intent continues only a moment, is a total and perpetual revocation, and the paper can only be set up as a new will. But that is founded on the intent. When, therefore, there appears what may be called a "cancel-

lation," it becomes necessary to look to the extent of it, at all the conduct of the testator, at what he proposed doing at the time, and what he did afterwards, to satisfy the mind whether that was meant in fact as a canceling, immediately and absolutely, or only conditionally, upon the contemplation of something else then in mind; for, although every act of canceling imports *prima facie* that it is done, yet it is but a presumption, which may be repelled by accompanying circumstances." It may be that the erasure was made by another person in the presence of the testatrix and by her direction and consent; but, under the provisions of section 42 of the Revised Statutes, it would not operate as a revocation of the will, unless proved by two witnesses. In *Sprigge* v. *Sprigge*, L. R. 1 Prob. & Div. 608, the testator made his will, and afterwards became insane. It was proved that after its execution it was in the custody of the testator, and was last seen in his desk about two months after its execution. After his death the will could not be found. A revocation of the will was pleaded. The court say: "The presumption of law in this state of things, under ordinary circumstances, is that it was destroyed *animo revocandi*. It appeared in this case that the testator, during a considerable portion of the time that elapsed between the making of the will and his death, was insane. The question therefore arises whether the court ought to apply the ordinary presumption of law in such a case. * * * The short proposition is, that the burden of showing that the revocation was done, not after the testator became insane, but when he was of sound mind, is cast on those who set up the revocation. In this case there was no evidence to show when it was done. Therefore those who sought to set up a revocation failed in establishing the facts on which the presumption of revocation would rest." The court cites with approval *Harris* v. *Berrall*, 1 Swab. & T. 153. *Sprigge* v. *Sprigge* and *Harris* v. *Berrall* are approved in *Benson* v. *Benson*, L. R. 2 Prob. & Div. 172, in which Lord PENZANCE says that, "the will having once been proved to be well executed, the court must in some way or other be satisfied affirmatively that it was revoked before it can pronounce against it. There is a lack of evidence as to the time when the act of cancellation was done. It is conceded that, if it were done before the wills act came into operation, it would amount to a revocation, and that, if it were done afterwards, it would not amount to revocation. * * * I hold that the burden of proving that the crossing out of the signature was done at a time when, according to the law of this country, it could effect a revocation lies on those who assert a revocation; and in the absence of such proof I am bound to pronounce for the will." In *Re King's Goods*, 2 Rob. Ecc. 403, after the death of the testator, his will was found with his original signature erased, but another signature by him appeared a short distance beneath. Held, that the original signature was not erased *animo revocandi*, as required by the wills act, and that in the probate the original signature must be restored, and the second signature omitted. Schouler, Wills, § 392. In accordance with these views and the authorities cited a decree will be entered admitting the will to probate.