## Lewis *against* Lewis.

The word "obsolete" written by a testator on the margin of his will, but not signed by him or any person for him in the mode prescribed by the sixth section of the Act of 8th April 1833, does not operate as a revocation of the will under the thirteenth section of that Act.

Parol declarations of a testator as to his intention of dying intestate are inadmissible to show a revocation of his will.

ERROR to the Common Pleas of *Bucks* county, to which an issue was directed to try the validity of a paper writing, dated July 18th, 1828, purporting to be the last will of John Lewis deceased, in which issue Samuel Lewis was plaintiff, and Thomas Lewis and William Bradshaw defendants.

The plaintiff proved the execution of the will, and read it in evidence. There was a codicil dated December 15, 1833, on the same paper with the will. Both were in the hand-writing of John Lewis, and signed by him. On the margin of the will was written the word "obsolete," which was proved by two witnesses to be also in the hand-writing of J. Lewis. The testator died in 1837.

The defendants offered to prove by a witness that the testator told him, subsequently to 1828, that any man was a fool who died leaving a will. This was objected to by the plaintiff, and overruled by the court; to which the defendants excepted.

The defendants further proved that there were seven or eight papers found with the above, purporting to be the last will of J. Lewis; but the will of 1828 was the last which had his signature to it. The one which witness took to be the last had no date or signature.

The court charged the jury that the word "obsolete," as written upon the will, did not operate as a revocation of it, and that the verdict must be for the plaintiff. To this charge the defendants excepted, and assigned for error:

1. The court erred in rejecting the evidence contained in the first bill of exceptions.

2. In charging the jury that the word "obsolete" did not operate as a revocation of the will.

3. In charging the jury that their verdict must be for the plaintiff; and in not submitting the facts to the jury for their determination.

*Ross,* for plaintiff in error.

Writing the word "obsolete" on the will was a common law

[Lewis v. Lewis.]

mode of revocation, unaffected by the Act of 1705.  2 *Dall.* 289. If it is to be construed by the Act of 8th April 1833, which, however, was passed after the date of the will, it falls within the last clause of the thirteenth section; " by burning, cancelling, or obliterating or destroying."  The words, " this will is invalid," written on a will by the testator, though not attested, were held a revocation of it.  2 *Conn. Rep.* 67.

Where the act of cancelling is equivocal, parol evidence is let in to show the testator's intention.  2 *Dall.* 266; *Pow. Dev.* 516, 539, 594; 4 *Serg. & Rawle* 295; 2 *Yeates* 170.

*Wright, contra,* contended that this was not a revocation under the Act of 1833, which requires a revocation to be signed by the testator, and proved by two witnesses.  The case cited from 2 *Conn. Rep.* 67 was decided on the ground that their statute did not require a revocation to be signed by the testator.  If the word " obsolete" were written before that Act, it can be no revocation, for the codicil was an implied republication of the will; 4 *Dess.* 321 ; besides, the Act of 1705 requires a revocation to be in writing, and to be proved by two witnesses.  The revocation, as well as the will, must be signed by the testator.  1 *Wms. Executors* 69*, 71*; *Swinb.* 512.

The declarations of the testator, as to his intention of dying intestate, were properly rejected.  4 *Whart.* 516.

The opinion of the Court was delivered by

Sᴇʀɢᴇᴀɴᴛ, J. — The testator wrote his will in July 1828, and revived it in December 1833, by a codicil written on the same paper.  When the will came to be examined, it was found that the testator had written on the margin of the first page, opposite to one of the clauses in the will, the word " obsolete."  Whether this word referred to the whole will, or only to the clause opposite to which it was written, might perhaps be doubtful; but that would be a different question from the one now brought before us, and therefore it is unnecessary to say more concerning it.  It is taken for granted that the word " obsolete" refers to the whole will, as originally written; and, that being the case, the Act of 8th April 1833 may apply.  For although if the word was written before the codicil, the latter annuls the alleged revocation, and revives the will, yet if it was written afterwards, then the question is, whether it is a sufficient revocation, within the purview of that Act, which contains our existing law as to wills, and embraces provisions on the subject of revocation of wills, more strict and precise than those which are to be found in the old Act of 1705.

The act of 1833, section thirteen, enacts that no will in writing concerning any real estate, shall be repealed, nor shall any devise or direction therein be altered, otherwise than by some other will

[Lewis v. Lewis.]

or codicil in writing, or other writing declaring the same, executed and proved in the same manner as is thereinbefore provided, or by burning, cancelling, or obliterating or destroying the same by the testator himself, or by some one in his presence, or by his express direction. The fourteenth section makes the same provision, as to personal estate, except in case of a nuncupative will. The mode of executing and proving a will is pointed out in the sixth section, which declares that, unless the person be prevented by sickness, the will shall be signed by him at the end thereof, or by some person in his presence, and by his express direction, and proved by two witnesses.

It cannot be pretended that writing the word "obsolete" can be considered as a burning, cancelling, obliterating or destroying the will. These are acts perfectly well defined, and understood, and a written declaration that a will is obsolete does not, in our opinion, fall within any of them, but is comprehended within the former class of revocations, namely, other writing declaring the will repealed or altered. To hold it to be within the latter class would confound cases entirely distinct, and render the statute a source of unceasing doubt and litigation. It could not fall within this class without torturing the obvious meaning of words, and destroying their plain import by subtle, verbal refinements. Then as a revocation under the first branch of the clause in the Act, it is defective in not being signed by the testator in the manner prescribed in the Act.

The language of our Act of Assembly resembles, with some slight variation, that of 29 *Car.* 2, *c.* 3, *sect.* 6, which enacts that no devise in writing, of lands, &c., nor any clause thereof, shall be revocable, " otherwise than by some other will or codicil in writing, or other writing declaring the same, or by burning, cancelling, tearing or obliterating the same, by the testator himself, or in his presence and by his directions and consent; but all devises and bequests of lands and tenements shall remain and continue in force until the same be burnt, cancelled, torn or obliterated by the testator, or his directions, in manner aforesaid, or unless the same be altered by some other will or codicil in writing, or other writing of the devisor, signed in the presence of three or more witnesses, declaring the same." In *Hilton* v. *King* (3 *Lev.* 86), where K, having by his will devised lands to his daughters D and S, and their heirs, and designing to revoke his will as to D directed the following words to be written on his will, viz : " We, whose names are underwritten, do testify that the above-named K did, the day of the date hereof, publish and declare that the several clauses and devises in his will, any way relating to his daughter D, should cease and be void, she being since married, and her portion paid : in witness whereof we have hereunto set our hands this 28th day of October 1680 ;" and the same was subscribed by four witnesses, in his presence. but K did not sign the same, nor any other person

II.— 58　　　2 o

by his direction, or by him authorized. These revoking words were written on the same side of the paper on which the will was written, and immediately under the testator's name subscribed thereto; and it was held that this was not a revocation for want of a signing by the testator. This case seems to me the same, in principle, as the present, and, considering the similarity of our statutes on the subject, as decisive of the question before us.

As to the parol evidence, it was clearly inadmissible. Mere parol declarations by the testator, as to his intention of dying intestate, whether before or after the making of his will, are not admissible to show a revocation of it.

Judgment affirmed.