In the matter of the Last Will and Testament of JOHN WILSON, Deceased.

CERTIORARI TO THE CIRCUIT COURT, MILWAUKEE COUNTY.

Where an inspection of a will itself leads to the conclusion thst it has been altered in a material part since its execution, and the alteration is not explained by evidence, it must avoid the instrument, and it will not be admitted to probate.

This matter first came on to be heard July 13, 1857, in probate court, in Milwaukee county, on the petition of Henry Durbin, that the will of John Wilson, deceased, be admitted to probate, and on written objections thereto, filed by Calista Wilson, the widow of the deceased. These were, *first,* that deceased was of weak mind and incapacitated to make a will ; and *second,* that the will had been altered since its execution, and therefore was void. To understand this objection, an extract from the brief of the counsel for the appellant is here inserted :

" The will has been altered in material particulars by the petitioner, since its execution, and is therefore void. A bare inspection can leave no doubt that it has been altered by some one since its execution. The words, *" and these articles to be delivered to my friend Henry Durbin immediately after my decease,"* beginning at the right hand and running around and across the margin at the top of the page, are obviously written in a different and firmer hand, and in different ink from that in the body of the instrument. The tremulous character of the old man's hand, so apparent on the paper written by him, is not seen, but is very faintly imitated in the marginal writing. The spelling in the margin does not cor-

respond with that in the body of the will. There are several places in the body of the paper where letters have apparently been altered to make them correspond with the spelling in the margin. The words " *that is*," are once interlined in different ink. The words " *Joel Hayman*" are written in still a third hand-writing, with different ink, and do not fill up the blank originally left for them."

Considerable testimony was taken on the first objection, but as the point is decided against the widow and in favor of the appellant, it will not be further noticed here.

Wm. W. Caswell, one of the subscribing witnesses to the will, testified before the probate court, on the second point, that the will was complete when Wilson signed it, and he did not recollect any writing on the margin, or any wrong side up. He was looking at Wilson when he read the will over, and did not recollect seeing the seal on it. Ansel F. Briggs, another attesting witness, said he did not remember any seal, and knew there was no candle or lamp in the room, at which the wax could be melted, nor was it done at the stove. Wilson drew the whole will. No other than he and the two witnesses wrote anything on it, and they only signed their names.

D. L. Deyo, Lowell Lincoln, Samuel Bishop, J. J. V. Platto, Jared Thompson and William Fowle, all testified that in their opinion the will had been interlined by another hand, and at a different time from that of the original making of the will. All agreed that the will was olographic.

A. P. Hobart, an attesting witness, to a former will, dated October 25th, 1855, testified: " I know the doctor's writing well; have often seen him write; think the main body of this second will is in his hand; that part in the margin, the words " Joel Hayman," and the words " as this," interlined in the body, are not in his hand.

The proof was that the will had been all the time in the

possession of Henry Durbin, until it was offered for probate.

Upon this testimony, Judge Paine, of the probate court, gave his opinion as follows:

In this matter Henry Durbin filed his petition for the probate of the will of John Wilson, deceased, dated on the 17th of March last. The usual order for hearing and notice were given, and on the day of hearing, Calista Wilson, the widow of the deceased, appeared by counsel and filed written objections to the probate of the will.

The principal objections were that the deceased was of unsound mind and incapacitated to make a will, and that the will had been altered since its execution.

Upon the first point much testimony was introduced on both sides, and it was contended on the part of the widow, that the deceased was insane. But I am satisfied that such was not the case. I saw nothing in the testimony going to show anything further than that weakness which generally accompanies old age. But while I am satisfied from the evidence, that the testator had the capacity to make a valid will, if left to himself, I think it still shows that he was in a condition, both mentally and physically, in which it would be easy for any designing person to obtain an undue influence over him. But upon this point I shall give no opinion, as I have come to the conclusion that I must decide the case upon the other ground.

I am fully satisfied from the evidence and inspection of the will, that it has been altered since its execution by the testator. It is all written on one page of common letter paper. The body of the will was written, as shown by the subscribing witnesses, by the testator himself. They swear that at the time of the execution no one wrote in the will but the testator and themselves, and that they only wrote their names as witnesses. The testator first gives his property in Oak Creek to his wife, to retain during her life, excepting his gold

watch, books, paintings, gun, pistol, telescope and dressing case. The word " case," in the original, comes nearly to the end of a line. There is then inserted, in a hand writing which I am satisfied is not that of the testator, the words, " and these articles to be delivered to my friend Henry Dur-Durbin, immediately after my decease." This addition completes the line where it began, then runs up the margin to the top of the page, and then, the will being turned around in order to write it, runs across the top to the other side of the sheet. Both of the subscribing witnesses say that they did not see this marginal writing. Yet it constitutes so prominent a feature, as to strike the eye at the first glance at the instrument, and I think no one could have placed the sheet before him and have written his own name upon it without noticing this peculiarity. From the fact therefore that neither of the witnesses did notice it; from the fact that they testify that no one but themselves and the deceased wrote upon the instrument at the time; and from the fact of which I am satisfied, that this addition is not in the testator's hand writing, I am impelled to the conclusion that it has been written there since the execution of the will, by some other person.

The words " Joel Hayman" also, in the body of the will, I am satisfied are not in the hand writing of the testator. I think no one can look at it closely without being satisfied that there was originally a blank left where those words are now written. The words do not now fill up the blank that was left, but between the words " Hayman " and " my," which followed it, there is much more space than is left between words any where else in the instrument. These words are also evidently written with different ink, and are in a different hand writing. It is true that the testator, if he left a blank there, must have done it for the purpose of inserting, or having inserted, some name. But if he had made the will of his own accord, he would naturally have known whom

he desired to appoint his executors, and the fact that this blank was afterwards filled up with the name of Joel Hay-man, who, from his own testimony, was an intimate friend and companion of Durbin, is in my opinion a strong circumstance going to show that the blank was left at Durbin's instigation, that he might consult his friend Hayman, as to whether he would act as an executor. And if this was so, I think it goes far towards showing an undue influence on the part of Durbin over the old man, in procuring this will. But, be this as it may, I have no doubt that the name of Joel Hayman was written in the will, as one of the executors, after the will was executed, and by some other person than the testator.

What effect does this have then upon the validity of the will? I shall not examine what would be the effect if it appeared that these alterations were made by the testator after the execution of the will, or that they had been made by a stranger. Probably in neither case would they invalidate it. But where it is made to appear that such alterations have been made, I think it devolves upon the party propounding the will for probate to explain them, and certainly to clear away all suspicion that they have been made by himself, he being interested and claiming under the instrument; and in this case this has not been done. The will was found in the possession of Henry Durbin immediately after the death of the deceased. It was filed by him in this office in an envelope addressed to him at Oak Creek, evidently in the handwriting of the deceased. And this envelope plainly appears never to have been sealed, and the sticking material placed on it for that purpose is still in the condition it was when put on. It appears then that the will has been altered; that those alterations are not in the handwriting of the testator who wrote the body of the will; that the instrument was in the possession of Durbin in a condition so that he could alter it ;

and that he was the only one interested in the alteration, for with the alteration the will gives him the articles referred to, immediately on the testator's decease, when without it, he would not be entitled to them, as a legatee, until the death of the wife. I am strongly inclined to think that on the evidence before me, a jury would find that the alterations were made by him or by his procurement. In *Masters vs. Miller*, where the question was upon an alteration in the date of a bill of exchange, Ashurt, Justice, says: " It is found by the verdict that the alteration was made while the bill was in the possession of Wilkinson & Cooke; *and it certainly was for their advantage*, because it accelerated the day of payment. Now upon these facts the jury would perhaps, have been warranted in finding that the alteration was made by them." The facts there were very similar to these.

I cannot assent to the proposition contended for by the counsel for Mr. Durbin, that in order to prevent the probate of the will on account of an alteration of it by him, it must be clearly proven as on a criminal trial. On the contrary I think I would would be warranted in finding upon the weight of evidence; and the alterations being once shown to have been made after the execution of the will; and he having failed to make any explanation of them, as I think he was bound to do; and there being very strong circumstances, in my judgment to show that they were made by him; I must on that account decide against the admission of the will to probate.

My opinion is that if Mr. Durbin made these alterations, he probably did not suppose he was doing any thing very wrong. He may have supposed that he was only carrying out the testator's intention, and very probably he was. But the rule has been satisfactorily established upon .grounds of public policy, that any alteration of an instrument by a party claiming under it, even though immaterial, makes it void, at least as to him. It is because it is exceedingly dangerous to

allow any tampering whatever, by interested parties, with solemn written instruments. If it were allowed in slight matters, it would lead to those more important, and therefore it is forbidden altogether.

There are some authorities, I believe, showing that a will may be void as to some parties, but valid as to others. But as the only parties interested here, are the widow, who objects to the probate of the will, and Mr. Durbin, who, I think, under the proof, is not entitled to have it admitted to probate, I must decree against its validity.

The petitioner appealed from this decision of the probate judge to the circuit court of Milwaukee; and on that appeal the circuit court reversed the decision of the probate court. The widow then sued out a certiorari from the supreme court, and brought the case up.

*O. H. Waldo & L. Wyman*, for the appellant, urged the point of the condition of the mind of the testator at the time of the making of the will, and then as a second point insisted that the will had been altered, and pointed out alterations as before stated, as appears by the evidence of the original will, and from the testimony given. An alteration made in a will, whether material or immaterial, by a person claiming under it, renders it void. *Jackson ex dem., Malin vs. Malin*, 15 J. R., 293.

In this case it is conceded by all parties, that the rule would be so as to deeds and other instruments of like solemnity, and it is only argued that the rule need not extend to notes and bills; but the court hold that the decisions establish this principle, to-wit: " *that all written instruments which were altered or erased should be thereby avoided. Masters vs. Miller*, 1 Smith's Leading Cases 954, 5, 6, 7, *et seq.*; See also 1 Greenleaf on Ev. § 564, 565, *et seq.*

" The rule, as now received, is that an alteration after execution, made by one claiming a benefit under the deed, or by

his privity, destroys the instrument as to him, and he can never sue upon it.  *Lewis vs. Payne,* 8 Cow. 71 ;  *Withers vs. Atkins,* 1 Watts, 237.

Whether the alteration was made before or after execution is a question of fact; but *the first presumption of fact from omitting to note the alteration at the attesting, is that it was made afterwards.*   1 Smith's Lead. Cases, 961 ; (note to *Masters vs. Miller* ;)  *Morris' Lessee vs. Van Deren,* 1 Dallas, 64 ;  *Provost vs. Gratz,* 1 Peters C. C. 365 ;  *Bailey vs. Taylor,* 11 Conn. 531, and other cases cited in note to *Masters vs. Miller; Tillon vs. the The C. & E. Mut. Ins. Co.,* 7 Barb. S. C. Rep., 564 ;  *Davis vs. Jenney,* 1 Met. 221;  *Wilde vs. Armsby,* 6 Cush.. 318 ;  *Mathews vs. Coulter,* 9 Mo. 705, 710.

" It is agreed by all the cases, that where the alteration appears to be suspicious on its face, and is not duly noted, as if the paper had been cut close, or a mutilated figure be left, or the ink differ, or the hand-writing be that of a holder interested in the alteration, &c., the onus lies with the party who claims that the alteration was genuine.   *3 Phil.* on *Ev.,* C. & H. Notes, part 1 ; note 285, p. 437, 462-3-4 ;  *Bishop vs. Chambre,* 3 Carr. & Payne, 55 ;  *Nunnery vs. Cotton,* 1 Hawks, 222 ;  *Jackson ex dem. Gibbs vs. Osborne,* 2 Wend., 555, 559 ;  *Jackson ex dem. Collier vs. Jacoby,* 9 Cow., 125, 126 ;  *McWicken vs. Beauchamp,* 2 Miller's La. Rep., 290 ;  *Lewis vs. Payne,* 8 Cow., 73 ; 1 Shep. Touchstone, 69 ;  *United States vs. Linn,* 1 How., U. S. 111;  *Barr vs. Bank et al.,* 4 S. & R., 405 ;  *Archer vs. Ledyard,* 8 Barb., S. C. R.

" If the deed or note has been in the possession of the party claiming upon it, it affords a presumption that the alteration was made by him ; and it lies upon him to show that he was not privy to it."  *Chesley vs. Frost,* 1 N. H., 145 ;  *Bowers vs, Jewell,* 2 N. H., 543 ;  *Barrington vs. Bank of Washington,* 14 S. & Rawle, 432 ;  *U. States vs. Linn,* 1st How., 104.

*Butler, Buttrick & Cottrill,* for the respondent, after comments on the evidence, as to the imbecility and the alterations appearing on the face of the will, urged that, on reading the will, without the alleged alterations, it will be seen that the name Henry Durbin, *first occurs,* as the "*the aforesaid Henry Durbin,*" a fact entirely inconsistent with the theory of the appellant, and consistent only with that of the respondent. As the instrument now reads, Henry Durbin is in this place properly denominated "*the aforesaid,*" as the name has once before occurred. The testimony of a witness who has the means of knowledge of an alleged alteration in a will, outweighs the evidence of a dozen witnesses, who speak only from an inspection of the paper. *Malin vs. Malin,* 1 Wend. 625.

*By the Court,* COLE, J. A careful consideration of the testimony in this case, and more particularly an inspection of the will itself, have led us to the same conclusion as that arrived at by the probate court, which is that the will has been altered in a material part since its execution, and this alteration not being explained, must avoid the instrument. The principle of law has not been controverted by the counsel, who supports the validity of the will, that if there has been a material alteration by a person claiming under it, the will is thereby invalidated. He concedes that this rule of law is well established by many well adjudicated cases, and rests upon the soundest principles of morality and public policy. We only have then to examine the evidence, to see if it shows that the will has been altered.

To our minds, the clearest and most satisfactory proof that the will has been altered, is derived from an examination of the instrument itself. The words "and these articles to be delivered to my friend Henry Durbin, immediately after my

decease," which are written up along the margin and over the top of the will, the page being inverted, and' also the words "Joel Hayman," in the body of the will, are unquestionably written with different ink, and with a much steadier hand, than the body of the will. It appears that the will was written by the testator himself, a man over seventy years of age. The character of the hand writing is very tremulous and unsteady, such as we would expect in an old person, while as before remarked, the words in the margin and the words "Joel Hayman," are written with a more steady hand, and a different ink, and, we think, must have been written by a different person. This dissimilarity in the character of the hand writing, and in the color and appearance of the ink, throws the greatest suspicion on the will. The attesting witnesses saw the will, and did not notice the writing on the margin or on the top of the page, a circumstance going strongly to show that this writing was not there when they signed the paper, or they must have observed it. This will was in the custody of Durbin ; he offered it for probate, and he should be prepared to show that the alteration was properly made, and clear up every suspicious circumstance about the instrument. This he has not satisfactorily done.

The counsel who argues in support of the validity of the will, insists that the will bears upon its face incontrovertible evidence of its own authenticity, since, on reading the will without the alteration, the name Henry Durbin first occurs as "the aforesaid Henry Durbin;" thus showing that the writing must have been in the margin in which the name of "Henry Durbin" is found, and to which the words "aforesaid Henry Durbin" must relate. But we do not see how this explains the great dissimilarity which evidently exists in the character of the writing, and the appearance of the ink. Who wrote the words in the margin ? Where were they written ? This position assumes that they were written by

In re Wilson.

the testator himself, when he wrote the rest of the will ; and for the reasons which we have already assigned, and for others, which might be given if necessary, we deem this position untenable.

It follows, from the views we have expressed, that the order of the circuit court, reversing the order of the probate court, must be reversed, and the order of the probate court, refusing to admit the will to probate, be affirmed.