# Dixon's Appeal.

1. After the due execution of a will, the testator altered certain legacies and the date by erasure and interlineation, and acknowledged it so altered in the presence of two witnesses without again signing it. *Held*, not to be a revocation.

2. A careful interlineation is not an "obliteration" within the Wills Act.

May 22d 1867. Before WOODWARD, C. J., THOMPSON and AGNEW, JJ. STRONG and READ, JJ., absent.

Appeal from the decree of the Register's Court of *Franklin county*, admitting to probate the will of William Gillan.

On the 14th day of January 1867 William Gillan made and duly executed his will, by which he gave to his two daughters, Sarah Ann Walker and Martha Dixon, $1500 each, and to his daughter Mary Gillan $1800. The will was witnessed by W. H. Blair, the scrivener, and H. Dyarman. Having completed the will he gave it to the scrivener to take charge of it. On the 15th of February he sent for the scrivener to bring his will. When he came the testator, for reasons which he stated, said he wished to alter the legacies to the daughters by reducing them each $300.

The will was altered, as is stated in the following testimony of Mr. Blair, and, as altered, admitted to probate by the register.

The daughters appealed to the Register's Court.

On the hearing before that court Mr. Blair testified:—

" He asked if there was not room in the will to change the legacies and reduce them $300. I told him that I might change two of them, but that there was not space to change the other. I wanted him to let me write a codicil and he asked me if he would have to write his name to it, and I told him he would. He said he didn't want to do that. I told him it would give room to the other heirs to make trouble, and give them a better chance to contest the will. He said he didn't think they would. I requested

[Dixon's Appeal.]

him to let me take the will home and write a new one and he declined to permit it, as he did not want to write. I hesitated at first, but afterward made the alterations as they appear now in the will. I changed the legacy to Mrs. Walker from $1500 to $1200; to Mrs. Dixon from $1500 to $1200; and Mary Gillan's from $1800 to $1500. I told Mr. Gillan we must have a witness if the alterations were made, and Mr. Dyarman was then sent for. He came. The date was then changed to the 15th of February. Mr. Gillan said it would not be his will on that day as he had not signed it then, and I suggested that if he would acknowledge his signature in the presence of the witnesses it would be equivalent to having signed it then. I then changed the date to the 15th of February. I showed him the will and all the alterations in the presence of Mr. Dyarman; explained them to the witness Dyarman, and Mr. Gillan then declared in our presence that this was his signature and this was his will. No new signatures were made that day by the testator or the witnesses. Mr. Gillan appeared to be suffering a great deal of pain and was lying in his bed, and I can't say whether he was able to sign his name or not. He did not say he could not write his name when I spoke of writing a codicil, but said he did not want to write it."

The other witness, in his testimony, concurred with Mr. Blair.

The Register's Court (King, P. J., of the Common Pleas) reversed the decree of the register and decreed that " the legacies to the appellants as they were originally written in the aforesaid paper, dated the 14th January 1867, and the date thereof, be restored, and that said paper then be taken and admitted to probate as the last will and testament of William Gillan, deceased."

The daughters again appealed, and assigned for error that the court erred:—

1. In decreeing that the paper executed on the 14th of January 1867, should be admitted to probate; and in not decreeing that the alterations in the paper made on the 15th of February 1867, and his declarations of same date, operated as a statutory revocation of the will made on the 14th of January 1867.

2. In not decreeing that William Gillan died intestate.

*McClure & Stewart* and *J. McD. Sharpe*, for appellants, cited Act of April 8th 1833, § 6, Purd. 1016, pl. 6, Pamph. L. 249; Act of 1705, 1 Sm. L. 33; Hight *v.* Wilson, 1 Dallas 94; Harard *v.* Davis, 2 Binn. 414; Arndt *v.* Arndt, 1 S. & R. 256; Walmesley *v.* Read, 1 Yeates 87; Stricker *v.* Groves, 5 Whart. 386; Dunlop *v.* Dunlop, 10 Watts 154; Clingan *v.* Mitcheltree, 7 Casey 25; Hays *v.* Harden, 6 Barr 409; Wikoff's Appeal, 3 Harris 281; Heise *v.* Heise, 7 Casey 250.

There was no counter statement or argument for the appellees.

[Dixon's Appeal.]

The opinion of the court was delivered, October 31st 1867, by

THOMPSON, J.—The appeal in this case, from the decree of the Register's Court of Franklin county, admitting to probate a will of William Gillan, deceased, dated the 14th January 1867, was taken by the appellants to establish a revocation of his will by the testator, and consequently an intestacy in regard to his entire estate.

It is necessary, in order to see clearly the position occupied by the appellants, to give a brief summary of the facts of the case.

Sometime after the execution of his will dated as above, and its delivery for safe keeping, it appears that the testator came to the conclusion that he would make a change in it, so far as to reduce the legacies to his daughters, the appellants, $300 each; giving as a reason, a fear that the expenses incident to his sickness would require this. To effectuate this purpose, he sent for the will, and desired the scrivener, with whom it had been deposited, and who had drawn it, to make this change by erasing the original sums mentioned, and interlining those intended. The scrivener made objections to this mode of accomplishing the object, and proposed writing a new will; but the testator insisted on the alteration, declaring an unwillingness to write his name again. Accordingly the alteration was made as he wished, and the date of the will altered to the 15th of February, the date of the alteration. The witnesses to the will were called in, and were present and their attention called to the change, and the testator acknowledged in their presence his former signature as the signature to the will. There was no new signing by the testator or witnesses, and no intention expressed by the former of a design to change the will in any other particular, and the former custodian again took charge of the will at the request of the testator.

The register admitted this altered instrument to probate, whereupon the daughters, the appellants in this case, took an appeal to the Register's Court, where after hearing, it was determined that the will of the date of the 14th January 1867, unaffected by the attempted alteration, was the last will of the testator, and admitted it to probate accordingly.

This reinstated the original instrument intact as the will of the testator; and thus were restored the legacies in favor of the daughters, the appellants, as originally inserted. In this decision the sons of the decedent, the residuary legatees, and who are the appellees in this case, acquiesced. Not so the daughters. They again appealed, in order, if possible, to create an intestacy as to their father's estate, so as to become equal sharers in it with their brothers, by setting up a revocation of the will in the acts referred to.

It must be borne in mind that no question is raised by any one, of a partial revocation, or revocation of the legacies to the daughters. The appellees do not claim it, and of course the appellants

would not; but they do claim that the attempted alteration, and the acknowledgment of his signature by the testator, operated as a revocation of the former will, and was a defective execution of a new one. If these positions are maintainable, then a will may be destroyed without intending it, and by other means than those given in the statute, as the only evidence of the *animus revocandi.* It would be a repeal of the Statute of Wills of 1833, so far as the 13th section is concerned at least.

That section provides, " That no will in writing concerning any real estate shall be repealed, nor shall any devise or direction therein be altered, OTHERWISE than by some *other will or codicil in writing,* or *other writing* declaring the same, *executed and proved* in the same manner as hereinbefore provided" for executing wills, " or by *burning, cancelling,* or *obliterating or destroying the same,* by the testator himself, or by some one in his presence and by his express direction."

To prevent frauds and perjuries is the section so specific. This enumeration of the means of revoking wills establishes two general methods. The one by writing; such as making a new will, or codicil, or other writing executed in the forms necessary to be observed in making a will. Certainly nothing like this appears in this case. The other method is by acting directly on the paper on which the will itself is written; and this may be by burning, cancelling, obliterating or destroying it. These all contemplate some physical act done, to evince the intention to revoke. The extent may not be material, provided there be enough to show an intention to destroy or cancel.

Here, there was neither burning, cancelling nor obliterating, or destruction of the will. If it had been claimed that the entire legacies to the daughters were destroyed by obliteration, there might have been abstractly some plausibility in it, but it was not intended, and nobody contends for it. But neither the signature to the will, nor its contents, were obliterated—I see not therefore how a careful interlineation could be held to be an obliteration within the act. The former means not destruction necessarily, as does the latter. Certainly it did not in this case, for the testator declared his will as altered, to be his will, and delivered it to be kept as such. Keeping in mind that it is the entire instrument which we have to deal with, and not the effect of the interlineation upon the legacies to the appellants, it must be apparent to all that in point of form the will of William Gillan, deceased, was not revoked, and in point of fact was not intended to be by him. It being a complete will, it could only be revoked in some one of the modes designated in the statute. " Those modes are an exclusion of all others:" Heise *v.* Heise, 7 Casey 246; 2 W. & S. 455.

We need not trouble ourselves about the propriety or accuracy

of the Register's Court in setting up as the will, that dated the 14th January 1867, in preference to that dated the 15th February 1867. The only parties interested to have that corrected if wrong, and we do not say it was or was not, are the appellees, and they do not ask it; they have not appealed. We will not, therefore, give them what they do not ask, even if it were much more clear in this case that we could do it, than it is. We decide only what is in the case according to the position of the parties, and that is, that the will of the decedent, William Gillan, was not revoked by any act of his, or by his authority.

Decree affirmed at the costs of the appellants.