## WILL OF MARY P. LADD.

*February 28 — March 18, 1884.*

WILLS: EVIDENCE.  *(1) Written revocation how executed. (2) Cancellation. (3) Declarations of intention to revoke.*

After the execution of a will, which was wholly written or printed on the first page of a double sheet, the testatrix wrote upon the fourth page of the sheet, "*I revoke this will*," with her signature

and the date, but such writing was not attested or subscribed by witnesses. *Held:*

(1) Not being executed in the manner prescribed for the execution of a will, such words were not valid as a written revocation.

(2) The will itself remaining intact, such writing was not a *cancellation* thereof within the meaning of sec. 2290, R. S.

(3) Declarations of an intention to revoke, not made at the time of such writing, were inadmissible.

APPEAL from the Circuit Court for *Grant* County.

The case is thus stated by Mr. Justice CASSODAY:

"It appears from the record and, in fact, is admitted by all parties and, in effect, found by the court, that the will of the testatrix was duly made, executed, attested, witnessed, published, and declared as a will, July 29, 1870, in the state of New York, but in strict conformity with our statutes, and that the will is entitled to probate, if not revoked; that the paper upon which the will was written was a very large, thick, double sheet, the first page of which was originally a printed blank form of a will, the blanks of which were filled up with the writing; that the written and printed parts constituting the will were wholly upon the first page; that nothing was written or printed upon the second or third page of the sheet,— they being entirely blank; that the usual indorsement by the scrivener was upon the fourth or outside page of the wrapper leaf, and upon which there was also written in pencil, in the handwriting of the testatrix, the words: '*I revoke this will. Mary P. Ladd, October 7, 1879.*'

"October 7, 1882, the testatrix died, in Grant county, Wisconsin, where she then, and for several years had, had her residence and domicile. The testatrix retained the will until her death, when it was found in the bottom of her trunk, tied up with her decree of divorce, and covered with a newspaper. The circuit court, affirming the decision of the county court, held that the will was revoked by the writing in pencil, and judgment was entered accordingly."

From that judgment *Arthur Sherman*, the proponent and one of the residuary legatees under the will, appealed.

*Wm. E. Carter* and *A. R. Bushnell*, for the appellant.

*J. T. Mills* and *John G. Clark*, for the respondent, contended, *inter alia*, that cancellation included every mode of revocation. The word "canceling" in sec. 2290, R. S. should have the same meaning that it has in the other sections of the statutes. R. S., secs. 687, 688, 1137, 1156, 1946; Laws of 1879, ch. 209; R. S. of U. S., secs. 3423, 3425, 4170, 4174–75; *Potter v. Brown Co.*, 56 Wis., 273; 2 Am. L. C., 689, 690; Blackwell on Tax Titles, 488, 489. The revocation in this case was complete. *Warner v. Warner's Estate*, 37 Vt., 356; *Evans's Appeal*, 58 Pa. St., 238; 3 Washb. on R. P., 696; 4 Kent's Comm., 532.

CASSODAY, J. The frauds incident to allowing written wills to be set aside by parol testimony finally culminated more than two hundred years ago in the trial of the feigned issue in *Cole v. Mordaunt*, where it appeared at the bar of the King's Bench that most of the nine witnesses against the will were guilty of deliberate perjury, and that the widow who sought to set aside the will was guilty of subornation of perjury. On a petition for a review of the case, Lord Chancellor NOTTINGHAM remarked that " he hoped to see one day a law that no written will should ever be revoked but by writing." See notes to *Mathews v. Warner*, 4 Ves. Jr., 196; *Prince v. Hazelton*, 20 Johns., 513. This remark and that trial led to the enactment of the statute of 29 Chas. II, " for the prevention of frauds and perjuries," in the following year. 3 St. at Large, p. 385, ch. 3. In fact, the eminent father of equity himself introduced the bill, as he afterwards stated in *Ash v. Abdy*, 3 Swanst., 664; 4 Lives Ld. Ch., 271.

Sec. 6 of that chapter prescribed the manner in which a " devise in writing of lands, tenements, or hereditaments," or " any clause thereof," might be revoked, and prohibited

revocation in any other manner.  Our statute relates to personal property as well as real estate, and has some words transposed, and is slightly different in some other respects; but otherwise sec. 2290, R. S., is substantially the same as that sec. 6.  The statute is imperative upon the court, and is to the effect that "no will, *nor any part thereof*, shall be revoked unless by (1) *burning*, (2) *tearing*, (3) *canceling*, or (4) *obliterating* the same, *with the intention of revoking it*, by the testator, . . . or by some other (5) *will* or (6) *codicil* in *writing*, executed as prescribed in this chapter, or (7) by some other *writing, signed, attested*, and *subscribed* in the *manner provided* in this chapter *for the execution of a will*." Sec. 2290, R. S.

Here are seven ways prescribed for revoking a will, and all other ways, except such as are implied by law, are expressly prohibited.  Each of the first four is by doing a specified act to the will itself, with the intention of revoking it.  Each of the last three must not only be *in writing* and *signed*, but also *attested* and *subscribed in the presence of the testator by two* or more competent witnesses.  Sec. 2282, R. S.  It stands confessed that the writing in pencil was never attested or subscribed by any witness, much less by two witnesses in the presence of the testatrix.  This failure to execute in the manner prescribed by the statute manifestly prevented the words written in pencil from going into effect as a written revocation.

It should be observed that the written and printed matter constituting the will was wholly on the first page of the double sheet.  The second and third pages were entirely blank.  The pencil writing was upon the fourth page,— the outside of the wrapper leaf.  Nevertheless, it is urged, in effect, that it was upon the same sheet of paper upon which the will was written, though remote from the writing, and hence that it should be held to have been done to the will itself; and that since the act so done consisted in writing *words*

disclosing an *intent to revoke*, it must be held to be a "*cancellation*" of the will, "with the intention of revoking it," within the meaning of those words as used in the statute. This, however, assumes that the second half-sheet of the paper, upon which no part of the will appears, constitutes a part of the will. If this is so, then a sheet of paper may be never so large, and yet if a will be written upon one corner, and words indicating an intention to revoke be written upon another corner, however distant from every part of the first writing, yet it would have the effect to cancel the will. Would this be a fair construction of the statute? Would such a construction prevent "frauds and perjuries," according to the original intention of those who enacted the statute? Or would it be more in harmony with that intention to hold that the written and printed matter together, found on the first page of the double sheet of paper in question, constitutes the will of Mrs. Ladd? Of course, there could be no written or printed matter except upon some substance, and hence so much of the first half-sheet of paper as was essential to the existence and preservation of such written and printed matter, may, in a sense, be regarded as a part of the will. But no part of the double sheet of paper, much less any portion of the first half-sheet upon which the will was written and printed, was in the least burned or torn. Nothing was done to any portion of the written or printed matter constituting the will. No part of it was obliterated. No part of it was erased or canceled. No interlineation was made. All that constituted the will remained intact. Every part of it remained as perfect as when it was first written. The same would have been true if the second half-sheet had been entirely severed from the first. The only question is, whether it was canceled, within the intent of the statute, by the mere force of the meaning of the word "revoke" contained in the pencil writing. As observed, the statute requires, not only the act of canceling the will itself, but that

it must be done with the intention of revoking it. *Burten-shaw v. Gilbert*, 1 Cowp., 49; *Doe v. Harris*, 6 Ad. & El., 209; *Francis v. Grover*, 5 Hare, 39; *Price v. Powell*, 3 Hurl. & N., 341; *Giles v. Warren*, 3 Eng. (Moak), 478; *White v. Casten*, 1 Jones Law, 197; *Means v. Moore*, Harper (S. C.), 314; *Cheese v. Lovejoy*, L. R. 2 Prob. Div., 251; *S. C.*, 21 Eng. (Moak), 633; *Swinton v. Bailey*, L. R. 4 App. Cas., 70; *S. C.*, 33 Eng. (Moak), 48; *Evans's Appeal*, 58 Pa. St., 238.

In *White v. Casten*, *supra*, the paper upon which the will was written was burned through in three places, one of them being in the midst of the writing, and a large part was scorched, but the writing was not interfered with, when it was rescued against the testator's wish, and preserved against his knowledge, and it was held to be a revocation. The mere act of burning, tearing, canceling, or obliterating the will itself, without the intent, is not enough. *Burtenshaw v. Gilbert*, 1 Cowp., 52; *Francis v. Grover*, 5 Hare, 39; *Locke v. James*, 13 Law J. Exch., 186; *Elms v. Elms*, 4 Jur. (N. S.), 765; *Bigge v. Bigge*, 9 Jur., 192; *Clarke v. Scripps*, 16 Jur., 783; *Giles v. Warren*, 3 Eng. (Moak), 478. So the mere intention to revoke the will, unaccompanied by any act of burning, tearing, canceling, or obliterating, done to the will itself, is not enough. *Doe v. Harris*, 6 Ad. & El., 209; *Hise v. Fincher*, 10 Ired. Law, 139; *Mundy v. Mundy*, 15 N. J. Eq., 290; *Gains v. Gains*, 2 A. K. Marsh., 190; *Runkle v. Gates*, 11 Ind., 95; *Perjue v. Perjue*, 4 Iowa, 520; *Heirs of Blanchard v. Heirs of Blanchard*, 32 Vt., 62; *Clingan v. Mitcheltree*, 31 Pa. St., 25.

Some courts have held that where the testator is deceived into the belief that he had done an act sufficient to revoke the will, it shall have that effect. *Pryor v. Coggin*, 17 Ga., 444; *Smiley v. Gambill*, 2 Head, 164. The case in Head was put on the ground that there was no such statute in Tennessee, and the case in Georgia fails to refer to any stat-

ute or decision.  On the other hand, several of the above cases hold that where the legatee has falsely deceived the testator into the belief that he has in fact revoked his will, he shall be held in equity to hold the property as trustee for the heir; but that there can be no revocation except in one of the modes prescribed by statute.  But see *In re Wilson's Will*, 8 Wis., 171; *Allen v. McPherson*, 5 Beav., 469; *S. C.*, 1 Phil. Ch., 133; *S. C.*, 1 H. L. Cas., 191; *Gaines v. Chew*, 2 How., 619, 645; *Malin v. Malin*, 1 Wend., 625.  The question, however, is not here involved, and is referred to merely because counsel seem to rely in part upon the Tennessee and Georgia cases.

Even if such intention to revoke be expressed in writing never so strongly, and signed by the testator, yet, if the writing was never in fact attested and subscribed by the requisite number of witnesses, in the presence of the testator, so as to become effectual as a revocation under the statute, it cannot operate as a revocation, when unaccompanied by any of the four acts, done to the will itself, specified in the statute.  *Kirke v. Kirke*, 4 Russ. Ch., 441, 451; *Locke v. James*, 13 Law J. Exch., 186; *S. C.*, 11 Mees. & W., 901; *Jackson v. Holloway*, 7 Johns., 394; *Hairston v. Hairston*, 30 Miss., 303; *Lewis v. Lewis*, 2 Watts & S., 455; *In re Penniman's Will*, 20 Minn., 245; *Laughton v. Atkins*, 1 Pick., 535; *Cheese v. Lovejoy*, L. R. 2 Prob. Div., 251; *S. C.*, 21 Eng. (Moak), 633.

In *Kirke v. Kirke, supra*, the codicil was signed by the testator, who, among other things, in effect therein declared: "I do hereby revoke that part of my said will" which has been erased, and in lieu thereof substitute what has been interlined; but it was held, by an eminent judge in such matters, that, although there was a clear intent to alter the will as indicated, yet that, as the codicil had not been duly executed and attested so as to pass real estate, such intention was ineffectual, and the original will was held to be

in force the same as though there had never been any alteration.

In *Locke v. James, supra,* the testator erased the word "six" wherever it occurred in his will, but leaving it still legible, and inserted over it the word "two," and thereupon added, presumably upon the same paper, the following memorandum or codicil to his will, *signed by him in the presence of one witness only:* "The alterations in the first and second sheet, all relating to the said annuities left to my daughter E. J. and her children, were made by me, the 15th of August, 1830. Witness my hand. R. N.;" — and PARKE, B., speaking for the court, said that the "rent-charge of £600 per annum, created by the will, duly executed and attested, . . . has not been canceled, for the erasure was made *sine animo cancellandi,*" and that it "has not been affected by the codicil, for the codicil is not duly attested, and therefore *cannot even be looked at,* so far as the real estate is concerned."

In *Jackson v. Holloway, supra,* the testator, after having erased certain words and interlined others in place of them, and "at the same time *indorsed on the will* an instrument" to the effect that he had made the alterations named, and thereby renewed the will, which instrument was duly signed, sealed, and published by the testator in the presence of *two* persons, who also signed the same as witnesses in his presence. But because there were not *three* instead of *two* witnesses, as required by the statute of New York, it was held that the erasures, interlineations, and the written indorsement so executed and witnessed, had no effect whatever upon the original will.

In *Lewis v. Lewis, supra,* the word "obsolete" was written by the testator upon the margin of his will, but it was held to be of no significance.

In *Laughton v. Atkins, supra,* it was strongly intimated, if not held, that the written instrument containing words of

revocation must itself be admitted to probate to have that effect.

In *Cheese v. Lovejoy, supra,* the testator had drawn his pen through the lines of various parts of his will, and then wrote on the back of it, "All these are revoked," and threw it among waste papers; but it was preserved, and it was held that there was no revocation, because the words " or otherwise destroying," in the present English statute, were not satisfied. But that statute does not contain the words " canceling or obliterating," like ours, and ours does not contain the word " destroying," like theirs; and hence the case is distinguishable. But in the more recent case of *Swinton v. Bailey, supra,* the will was made prior to the statute of Victoria, and the case was decided under the old statute like ours, and it was held by the House of Lords that the words " her heirs and assigns forever," through which the testator had drawn his pen, had been obliterated, within the meaning of that word as used in the statute of frauds.

Counsel for the respondent insist that the revocation here was complete within the rule followed in *Evans's Appeal,* 58 Pa. St., 238. In that case the will was executed May 24, 1856, and the last clause of it spoke of two erasures and interlineations in their places. At the same time, and immediately beneath the signature of the testator, was a codicil, also signed by the testator, making two changes in the will. Then followed the attesting clause and the signature of the witnesses. On or about July 21, 1858, the testator tore through three different clauses of the will, and made three erasures, one of which was so obliterated as to be illegible; and then made a second codicil, explaining such alterations and revocations. This second codicil was duly signed and published by the testator, in the presence of the requisite witnesses, who subscribed the same. Subsequently the testator tore the first codicil in two places, erased his signature thereto, and also erased his signature

to the second codicil, and wrote beneath it the word " canceled." The will and codicils were all upon the same sheet of paper. This paper was indorsed "Will," which was erased, and the word "canceled" written beneath it. Independent of the writing of the word "canceled" there can be no doubt but what the tearing of the first codicil, which was executed at the same time and was in fact a part of the original will, and the erasure by the testator of his signature thereto, and also the erasure by him of his signature to the second codicil, was a complete revocation of the will. *In re Cooke*, 5 Notes Cas., 390; *Price v. Powell*, 3 Hurl. & N., 341; *In re Simpson*, 5 Jur. (N. S.), 1366; *In re James*, 7 Jur. (N. S.), 52; *In re Gullon*, 4 Jur. (N. S.), 196; *Avery v. Pixley*, 4 Mass., 460; *Mence v. Mence*, 18 Ves. Jr., 348. The case of *Woodfill v. Patton*, 76 Ind., 375, cited by counsel, was under a different statute, and hence is not applicable. The same is true of the recent case of *Lovell v. Quitman*, 88 N. Y., 377. See *Gay v. Gay*, 60 Iowa, 415, which was also under a different statute.

The learned judge writing the opinion in *Evans's Appeal* was clearly right in saying: " But to enable the will, codicil, or other writing to have such an effect [revocation], it must itself be complete, executed, and proved in the prescribed manner, namely, as a will. The other mode of repeal is something done to the will itself, something more than mere intention expressed. It must be intention to annul carried into execution by acts done to the paper. . . . Were there nothing more than the erasure of the last signature to the writing dated May 24, 1856, it would be difficult to escape from the conviction that it was an act of repeal annulling all that preceded that signature." In view of the additional facts which appeared, that the testator also tore the first codicil in two places and erased his signature from the second codicil, it would be impossible to come to any other conclusion than that he intended, by the acts named,

to revoke both of the codicils and the whole will. These several acts being made with the intent to revoke, as there found, clearly amounted to a cancellation of the will; but when the learned judge went further, and construed the word "canceled," written thereon, and said, "*I think* a repeal [a revocation of the will] is effected by the act of writing upon the will itself a word that manifests an intention to annul it," he was evidently speaking for *himself*, and not for the court, and as it would seem in direct violation of the rule he had just expressed himself, to the effect that there could be no revocation by mere "writing," unless it "be complete, executed, and proved in the prescribed manner, namely, as a will." Besides, such a rule would be in conflict with a previous decision in the same court. *Lewis v. Lewis*, *supra*. True, the learned judge attempts to distinguish that case by observing "that though the word was written upon the paper on which the will was written, it was placed where it could have been detached without defacing the instrument. It might have been separated and the will itself remained intact. In this respect it differed from the case now before us." That distinguishing element, even if it were sound, would distinguish *Evans's Appeal* from the case before us, and make *Lewis v. Lewis* applicable. The learned judge who wrote that opinion was evidently led to say what he did by what was said by the judge writing the opinion in *Warner v. Warner's Estate*, 37 Vt., 356, where the testator wrote on the back of the very paper on which a part of the will was written, and on the second page, and just below some of the writing, so that it could not be separated from it, the words "This will is hereby canceled and annulled in full, this 15th day of March, in the year 1859." Other words were written on the fourth page, and some erased, but the court held, in effect, that the will was canceled by force of the above words. If that ruling were sound, the facts would distinguish the case from this; but giving the force of

revocation to the words themselves, without being executed, attested, and subscribed as required by the statute and without any tearing or burning of the paper upon which any part of the will was written, and without erasing, defacing, or obliterating any of the words of the will, or the signature of the testator or the signature of the witnesses, would seem to leave the case standing alone, with nothing to support it, and in opposition to the principles maintained in some of the best adjudicated cases.    Besides, the case is condemned by one of our ablest text writers on the subject.    1 Redf. on Wills, (4th ed.), 318.    The difficulty with the rule contended for is that it gives to the words written in pencil, although not attested, witnessed, nor executed in the manner prescribed by the statute, the same force as though they had been so attested, witnessed, and executed, for the purpose of proving that the act of putting the words there was with the " *intention* " of revoking the will.    It is the language — the expression by written words alone — which is thus sought to be made effectual; whereas the statute in effect declares that such written ,words shall have no force or effect as such unless executed, attested, and subscribed as required.

The argument used by the writer of the opinion in *Evans's Appeal, supra*, and here repeated, to the effect that the word " canceling " in the statute is used in the same sense as canceling notes, bonds, or other written instruments, is plausible, but fallacious.    It is the payment, adjustment, settlement, or decree of the court which precedes the writing of the word " cancel " upon the instrument, that effects the cancellation.    The word is written in such case merely as a memorandum or evidence of the previous facts which operate as a nullification.    Besides, such writing is generally upon the face of the instrument itself, and not upon some remote corner of the same sheet.    A will, unlike other written instruments, does not go into effect until the tes-

tator's death. The mode of making a will is definitely pre-scribed by statute, and the mode of revoking wills is also definitely prescribed; and no essential part of the latter can be dispensed with any more than the former. So, a specific mode of cancellation of tax certificates, etc., fixed by statute, furnishes no ground for holding that a will, though not included in such statutes, may also be canceled in the same way. Our statute as to the mode of revoking wills came to us with its history, and the constructions which had been put upon it by the courts. In so taking it, the people of the state knew what they had obtained. To change that con-struction by some artificial mode of reasoning is to open the door to vagueness and uncertainty, the disastrous effects of which no one can in advance determine.

But it is claimed that such intention to revoke is suffi-ciently proved, without resorting to the words in pencil, by the declarations of the testatrix. It is not claimed, and there is no evidence tending to show, that any of such declara-tions were made at the time the words in pencil were writ-ten, but on other and different occasions. Such declarations are clearly inadmissible, because they do not constitute a part of the *res gestœ;* besides, to allow them to have the force of evidence would be admitting testimony of one unsworn, and without the privilege of cross examination. *Jackson v. Kniffen,* 2 Johns., 31; *Waterman v. Whitney,* 11 N. Y., 157; *Staines v. Stewart,* 8 Jur. (N. S.), 440; *Boylan v. Meeker,* 28 N. J. Law, 274; *Hargroves v. Redd,* 43 Ga., 142; *Runkle v. Gates,* 11 Ind., 95. The admission of such declarations to rebut the inference of fact arising from the absence or loss of a will is upon a different theory, as will appear from the well-written and able opinion of Judge Dyer in *Southworth v. Adams,* 11 Biss., 256. It has been held that where the in-tention to revoke had existed and been partly carried into execution, and the testator changed his mind and arrested the act of burning, tearing, canceling, or obliterating the will

before its completion, leaving the will so that its contents could still be read, that it might nevertheless be admitted to probate. *Doe v. Perkes*, 3 Barn. & Ald., 489; *Doe v. Harris,* 6 Ad. & El., 209; *Giles v. Warren*, 3 Eng. (Moak), 478.

So, where there has been an attempt to alter certain portions of the will by erasure, without obliteration, and by substituting new words in their place by way of interlineation, and the writing thus altered failed to go into effect for want of re-attestation, courts have held that there was no intent to revoke, except by way of alteration, which having failed, the will remained intact as before. *Short v. Smith*, 4 East, 418; *Kirke v. Kirke*, 4 Russ. Ch., 435; *Martins v. Gardiner*, 8 Sim., 73; *Locke v. James*, 13 L. J. Exch., 186; *Jackson v. Holloway*, 7 Johns., 394; *McPherson v. Clark*, 3 Bradf. Surr., 92; *Wolf v. Bollinger*, 62 Ill., 368; *Wright v. Wright*, 5 Ind., 389; *In re Penniman's Will*, 20 Minn., 245; *Quinn v. Quinn*, 1 Thomp. & C., 437; *Wheeler v. Bent*, 7 Pick., 61.

But without further discussion, which is already too extended, the judgment of the circuit court is reversed, and the cause is remanded with direction to reverse the judgment of the county court and to direct judgment admitting the will to probate.

*By the Court.*— Ordered accordingly.