## Williams' Estate

*Eugene C. Sloan,* for appellants.
*Bane & Bane,* for executrix.

MATTHEWS, J., September 30, 1938.—This matter comes before us on appeal from the probate of a will. The facts are not in dispute. From the evidence produced, we make the following

*Findings of fact*

First. Walter C. Williams made his will on December 31, 1925. It was prepared by David E. Bane, a member of the bar, who was one of the subscribing witnesses. The will consists of two typewritten sheets of paper 13 inches long and 8½ inches wide, and a blank sheet of

the same size constituting the first page, all within a cover, and all fastened together at the top by eyelets.

Second. Under the terms of his will testator devised all his property to his sister Bessie M. Starr and her daughter Frances M. Starr, in the manner therein expressed. Both survived testator.

Third. Testator died on March 31, 1938. Thereafter, the will was found by Frances M. Starr in a box where testator kept his papers, and in the home of Bessie M. Starr and Frances M. Starr, where testator had resided since prior to December 31, 1925, the date of the will.

Fourth. When the will was found, there was written on the first, or otherwise blank sheet, the following:

"if I should die befor I have a other will made I wand my Estate to be divided amongst my three Sisters M. Bessie M. Star Nancy Bakewell Jessie M. Beals"

The first line of the writing begins about 1¾ inches and ends about 1½ inches from the top of the sheet. The above-quoted words are in the handwriting of testator. The writing is not signed by testator.

Fifth. When the will was found, there was written on the second sheet, at the top, the following:

'this will to be destroyed this is the March 22: 1932"

The first line of the will as prepared by the attorney and executed by testator begins on this sheet about 2 5/16 inches from the top. The quoted words are written on the margin above said will, and in such manner as not to touch any of the words of the will. The quoted words are also in the handwriting of testator. They are not signed by him.

Sixth. On April 5, 1938, the paper writing was presented to the register of wills, who refused to probate as a part of the will the writing on the first sheet and the writing at the top of the second sheet, but did probate the remainder thereof as the last will and testament of testator. From this probate Nancy Bakewell, a sister of testator, and Springer Beals, a nephew and a son of Jessie M. Beals, a deceased sister, have appealed.

*Discussion*

We are required to consider the effect of the above-mentioned writings on testator's will.

Section 20(*a*) of the Wills Act of June 7, 1917, P. L. 403, 20 PS §271, provides:

"No will in writing, concerning any real estate, shall be repealed, nor shall any devise or directions therein be altered, otherwise than by some other will or codicil in writing, or other writing declaring the same, executed and proved in the manner hereinbefore provided; or by burning, canceling, obliterating, or destroying the same by the testator himself, or by someone in his presence and by his express direction."

Section 20(*b*) provides:

"No will in writing, concerning any personal estate, shall be repealed, nor shall any bequest or direction therein be altered, otherwise than as hereinbefore provided in the case of real estate, except by a nuncupative will made under the circumstances set forth in section four of this act, and also committed to writing in the lifetime of the testator, and, after the writing thereof, read to or by him and allowed by him, and proved to be so done by two or more witnesses."

In order to revoke a will by some other will or codicil in writing, or other writing declaring the same, it must be executed and proved in the same manner as a will.

Section 2 of the Wills Act, prescribing the manner in which a will shall be executed and proved, is as follows:

"Every will shall be in writing, and, unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof, or by some person in his presence and by his express direction; and, in all cases, shall be proved by the oaths or affirmation of two or more competent witnesses; otherwise, such will shall be of no effect: Provided, That the presence of dispositive or testamentary words or directions, or the appointment of an executor, or the like, after the signature to a will, whether written before or after

the execution thereof, shall not invalidate that which precedes the signature."

At the argument it was suggested, but not seriously contended, by counsel for appellants, that the writings should be treated as alterations or interlineations. Revocation in part by striking out bequests, or by canceling them by drawing lines through them, has always been sustained by our courts: Linnard's Appeal, 93 Pa. 313; Tomlinson's Estate, 133 Pa. 245; Morrow's Estate (No. 1), 204 Pa. 479; Hickman's Estate, 308 Pa. 230.

The theory on which alterations or interlineations are sustained is the presumption that they were made prior to the execution of the will or of the last codicil. The writing at the top of the second sheet is dated. It bears a date long after the date of the will. The substance of the writing on the first sheet shows that it also was made after the date of the will. The physical facts are that the writings are not interlineations at all. No lines or marks have been drawn through any part of the will. Therefore, these writings cannot be sustained as alterations or interlineations.

The statute provides the methods by which a will may be revoked. They may be enumerated as follows: (1) By other will in writing; (2) by codicil in writing; (3) by other writing declaring the same; (4) by burning; (5) by canceling; (6) by obliterating; or (7) by destroying.

The writing on the first page is testamentary in character. It shows an intent to change the provisions of the will and an intent to make another will. However, it is not signed by testator as required by statute. It is not another will in writing; it is not a codicil to a will. Therefore, the will was not revoked by either the first or second method mentioned.

The writing at the top of the second sheet "this will to be destroyed this is the March 22: 1932" is not testamentary in character These words are clearly within the terms "or other writing", as set forth in the statute. But again, the writing is not signed by testator. There was

no compliance with the statute. Therefore, the will was not revoked by the third method mentioned.

Appellants contend, however, that the act of testator operates as a revocation by one of the other methods mentioned, particularly the last. The words of the statute are "by burning, canceling, obliterating or destroying". An examination of the will does not disclose the slightest mark upon it which cancels, obliterates, or destroys any part of of it. The writing at the top of the second sheet does not touch any part of the will. It seems to us that the only question for determination is the effect of the writing on the second sheet. Are the words and figures "this will to be destroyed this is the March 22: 1932" equivalent to cancellation, obliteration, or destruction of the will? We are of the opinion that they are not.

It is immaterial whether the words are "this will to be destroyed", "this will is destroyed", "this will is revoked", or words of similar import; for, unless the words are signed or there is some physical act of cancellation, obliteration, or destruction, with animo revocandi, there is no revocation. The statute does not provide that a will may be revoked by writing on it "this will is burnt", "this will is cancelled", "this will is obliterated", or "this will is destroyed", when in fact, none of these things has been done in the slightest degree. The statute was enacted for the very purpose of preventing the setting aside of wills in any such manner.

In Lewis v. Lewis, 2 W. & S. 455, testator had written the word "obsolete" on the margin of the first page of his will. The court said (p. 457):

"It cannot be pretended that writing the word 'obsolete' can be considered as a burning, cancelling, obliterating or destroying the will. These are acts perfectly well defined, and understood, and a written declaration that a will is obsolete does not, in our opinion, fall within any of them, but is comprehended within the former class of revocations, namely, other writing declaring the will repealed or altered. To hold it to be within the latter class

would confound cases entirely distinct, and render the statute a source of unceasing doubt and litigation. It could not fall within this class without torturing the obvious meaning of words, and destroying their plain import by subtle, verbal refinements. Then as a revocation under the first branch of the clause in the Act, it is defective in not being signed by the testator in the manner prescribed in the Act."

How can it be said that the will is destroyed when in fact there is no act of destruction whatever? In Clingan v. Mitcheltree, 31 Pa. 25, the court says (p. 34): "To comply with the statutory requisition of revocation by destroying, there must be some act of destruction, or towards destruction, done *animo revocandi*—mere words will not suffice." In this case testator had given his will into the possession of his wife, the sole devisee. Afterwards, he made ineffectual searches for it, with the view of destroying it. The wife brought forward a paper, alleging it to be his will, and in his presence burnt it, but the will was not burned and the court held that it was not revoked.

After the solemn execution of a will, it must remain in effect unless revoked by one of the modes designated in the act. "Those modes are exclusive of all others. Writing an unsigned bequest upon another paper, or upon the same paper, is not one of them": Heise v. Heise, 31 Pa. 246, 249. The acts of burning, canceling, obliterating, or destroying contemplate some physical acts done: Dixon's Appeal, 55 Pa. 424.

The only case which seems at first to support appellants' contention is Evans' Appeal, 58 Pa. 238, but a careful examination of the facts of that case will show that it is not inconsistent with the views herein expressed. The will in that case was signed twice by testator, once in the ordinary position, and once after an addition, both the will proper and the addition being dated on the same day. There was also a codicil signed by testator. It was folded and endorsed "will". After the death of testator

it was found that a line was drawn through the last of the two signatures to the will proper, also through the signature to the codicil, under which signature was written the word "cancelled" and also through the word "will" endorsed on the instrument, under which was written the words "cancelled". The will was also torn in a number of places. In connection with the discussion on the act of writing the word "cancelled" on the will the court said (p. 246):

"But, I think, a repeal is effected by the *act* of writing *upon the will itself* a word that manifests an intention to annul it. Such an act is a mode of repeal, of the second kind recognized by the legislature, a thing done to the paper on which the will it written."

But it was entirely unnecessary for the court to rely upon this act as canceling the will. The signature to the codicil was actually canceled. The last signature to the will proper was actually canceled. These acts alone were entirely sufficient to revoke the will. Indeed, the learned judge says (p. 244):

"Were there nothing more than the erasure of the last signature to the writing dated May 24th 1856, it would be difficult to escape from the conviction that it was an act of repeal annulling all that preceded that signature."

The cancellation of the signature strikes at the very existence of the whole instrument: Baptist Church v. Robbarts, 2 Pa. 110; Tomlinson's Estate, supra.

We find authority in other jurisdictions supporting our view of the case. The facts in In re Akers' Will, 74 App. Div. 461, 77 N. Y. Supp. 643, are substantially the same as the facts in this case. Testator wrote on the margin of his will:

" 'This codicil and will is revoked. Jany. 14/96. Fredk Akers.' " He also wrote on the back of the first page: " 'Revoked Jany 14th 1896. Fredk Akers.' " The New York statute, with reference to revoking a will, is similar to ours, but the statute of that State requires that a will be signed at the end thereof and that there shall be at

least two attesting witnesses. Our statute does not require attesting witnesses. It is to be noted that the above writings were signed by testator but that they were not witnessed. The court held that they did not constitute a revocation.

In the case of In re Ladd, 60 Wis. 187, 18 N. W. 734, testatrix wrote on the cover page of her will the following: " '*I revoke this will. Mary P. Ladd, October 7, 1879.*' ". The statute of that State also requires two or more subscribing witnesses. The court held that the will was not revoked. The opinion in that case contains an exhaustive discussion of the subject, referring to the frauds sought to be prevented by permitting written wills to be set aside by parol testimony and reviewing many authorities.

The statute of the State of Illinois also requires that a will be signed in the presence of two or more subscribing witnesses. In order to constitute a revocation a writing must be executed with the same formalities. In the case of Dowling et al. v. Gilliland et al., 286 Ill. 530, 122 N. E. 70, testator wrote on the back of the will, " 'All I have I want to go to my sister, Miss Ella Willden.' " There also appears on the back of the will the following notation: " 'This is no good; will try to make another.—December 10, 1906.' " There was also written on the face of the will the following: " 'Not any good.—December 11, 1907' ". No signature of testator appears in connection with any of these writings. The court held that the will was not revoked.

An unsigned writing on a will, which does not in any way physically cancel, obliterate, or destroy the same, is insufficient to revoke the will.

### Conclusions of law

First. The writing on the first or otherwise blank sheet of the will of Walter C. Williams, deceased, not being signed, is not another will or a codicil to a will and is, therefore, void and of no effect.

Second. The writing at the top of the second sheet of testator's will, not being signed by testator, is not such other writing as revokes the will and is, therefore, void and of no effect.

Third. Neither of the writings above mentioned revokes the will of the testator.

### Decree

And now, September 30, 1938, after and upon consideration thereof, the appeal from the probate of the will of Walter C. Williams, deceased, by the register of wills, is dismissed, and the probate thereof is sustained, unless exceptions are filed hereto within 15 days.